MAXINE GAUDIO v. ARTHUR GAUDIO ET AL.
(7630)

DUPONT, C. J., DALY and FOTI, Js.

Argued April 3—decision released September 18, 1990

*Pat Labbadia III,* for the appellant (defendant Frank Eannelli).

*Gaetano Ferro,* with whom was *Gina A. Pasquini,* for the appellee (plaintiff).

DUPONT, C. J. This appeal stems from an action for the dissolution of a marriage and fraudulent conveyance brought by the plaintiff. Arthur Gaudio, the plaintiff's former husband, was the original defendant (Gaudio). Frank Eannelli was later joined as a defendant in the

fraudulent transfer count of the plaintiff's complaint. Only Eannelli has appealed from the judgment of the trial court.

The trial court found certain facts relevant. The Gaudios were married in 1962 and separated in 1972 or 1973. The plaintiff filed the present dissolution action in 1985. During the time that the Gaudios lived together, the plaintiff cared for their home and child and worked with her husband in his business. She also allowed Gaudio to use funds from the sale of her house to pay his business debts. The court specifically found that the plaintiff's "contribution in general was at least as great as [Gaudio's] in the total marriage . . . ." After the Gaudios separated, their son lived with the plaintiff until 1985, at which time he moved in with Gaudio. The plaintiff supported herself and her son with occasional help from Gaudio during the years between the separation and 1985.

While the Gaudios were living together, Gaudio owned some stock in Stamford Color Photo, Inc. At the time that the dissolution action was filed, he had become the sole stockholder in the corporation. The corporation's sole asset was a commercial building, from which Gaudio received $1600 per month in rent.

During the pendency of the dissolution and while Gaudio was in prison for a conviction of bank fraud, he was allegedly informed that Eannelli was interested in purchasing the stock in the corporation for $250,000. Prior to this, Gaudio knew that the Stamford Shelter for the Homeless was interested in buying the stock for $625,000 in order to acquire the building owned by the corporation.

On October 26, 1986, Gaudio allegedly sold his stock to Eannelli for $250,000, and received, in installment payments over a six month period, $110,000 in cash.

The difference consisted of debts, including property taxes and a mortgage on the building, which he claimed were deducted from the sale price and paid by him from the cash proceeds. The court found, however, that several of these debts were undocumented and it questioned whether there ever actually was a payment of $110,000. No records of the alleged stock transfer were produced at trial.

After the alleged sale, Gaudio, acting as president of the corporation, proceeded to negotiate with the homeless shelter for the sale of the building and continued to collect the $1600 rent each month. On May 31, 1988, the building was sold to the shelter for $700,000. Gaudio and the secretary of the corporation were present at the closing and received $125,000 in cash, and mortgages totaling $575,000. The mortgages, however, had not been recorded as of the date of the trial.

When the plaintiff learned of the stock transfer she instituted a separate civil action against Gaudio, Eannelli and Stamford Color Photo, Inc., alleging a fraudulent conveyance of stock and seeking an injunction and a decree setting aside the conveyance.[1] She later filed a motion, pursuant to Practice Book § 85, to make Eannelli a party in the dissolution action. The court, *Landau, J.,* granted the motion and allowed the plaintiff to amend her complaint to include a count of collusion and fraudulent transfer against both Gaudio and Eannelli. Eannelli subsequently filed a motion to dismiss that was denied by the same court. The motion claimed that Eannelli should not be a party because he was not a party to the marriage or a correspondent in an adultery claim and because the court had no personal jurisdiction over him.

[1] The civil action was dismissed in December, 1989, for failure to prosecute with due diligence. The plaintiff has since filed a motion to open that judgment and the defendants in that action have opposed that motion. No action had been taken on the motion as of July 1, 1990.

After a full trial, the court, *Hon. Margaret C. Driscoll,* state trial referee, dissolved the Gaudios' marriage and ordered Gaudio to pay the plaintiff $215,000 in lump sum alimony and $25,000 in attorney's fees. The court also found that the alleged stock transfer was fraudulent as to the plaintiff and ordered Eannelli to transfer the stock and the mortgages on the building to Gaudio. Gaudio, in turn, was ordered to take the necessary steps to obtain the stock and the mortgages and to turn them over to the plaintiff's attorney to be held in escrow pending execution of the judgment.

Although neither party has raised the issue on appeal of whether Eannelli was properly joined as a party to the dissolution action, we address it sua sponte because of its bearing on Eannelli's standing to appeal and because of our prior holding in *Livsey* v. *Livsey,* 11 Conn. App. 43, 525 A.2d 546 (1987).

In *Livsey,* the defendant husband in a dissolution action was awarded a sum to be paid by the plaintiff wife in the future. Subsequently, the husband assigned his award to a third party. The plaintiff was allowed to add the assignee as a party to her motion for modification made five years after the judgment of dissolution. We denied, sua sponte, the third party assignee standing to appeal from the judgment of modification.

We concluded that the assignee was not a proper party to the modification action. We recognized that "[t]here are certain categories of persons who are permitted [by statute] to intervene in a dissolution action"; id., 46; and determined that the assignee did not come within any of them. We reasoned that a dissolution judgment is unique in that it establishes the status and obligations of the parties to a marriage, and we held that such a judgment "cannot be opened at the request of a complete stranger to the original judgment." Id.; see also *Manndorff* v. *Dax,* 13 Conn. App. 282, 287,

535 A.2d 1324 (1988). Our opinion, although distinguishable on its facts, did not mention the Supreme Court's decision in *Molitor* v. *Molitor,* 184 Conn. 530, 440 A.2d 215 (1981), or our own decision in *Derderian* v. *Derderian,* 3 Conn. App. 522, 490 A.2d 1008, cert. denied, 196 Conn. 810, 811, 495 A.2d 279 (1985).

In *Molitor,* decided six years prior to *Livsey,* our Supreme Court tacitly approved the joinder to a dissolution action of a third party not within the statutory categories. The plaintiff in that case alleged that the defendant husband had fraudulently conveyed marital property to his uncle. The trial court allowed the plaintiff to add the uncle as a defendant, annulled the conveyance, and transferred the husband's interest in the disputed property to the plaintiff. Only the husband appealed, and the propriety of the uncle's presence in the action was not directly challenged. Addressing the plaintiff's challenge to the husband's standing to appeal, however, the court stated that "it is true that the [uncle] might have adequately contested . . . the conveyance of the defendant's interest in the marital property" but noted that he had elected not to participate in the appeal. *Molitor* v. *Molitor,* supra, 533; see also *Miller* v. *Miller,* 22 Conn. App. 310, 311 n.1, 577 A.2d 297 (1990). The court also stated that neither party to a dissolution action can frustrate the orderly adjudication of rights in marital property; *Molitor* v. *Molitor,* supra, 534; implying that neither party can exclude a third person with rights in marital property from participating in the dissolution action.

In *Derderian* v. *Derderian,* supra, a partition action brought by the transferee of a husband's interest in the marital home, the defendant wife counterclaimed, alleging a fraudulent transfer of the interest. The husband's interest in the property had already been awarded to the defendant in a separate dissolution action to which

the plaintiff was not a party. In dicta, we cited *Molitor* for the proposition that "[t]he better practice would have been the joinder of the plaintiff in this case in the . . . dissolution action so that the issue of the alleged conspiracy of the plaintiff with [the husband] to defraud the defendant of the marital asset could have been determined." *Derderian* v. *Derderian,* supra, 527 n.6.

Although the holding in *Livsey* appears to conflict with the dicta in *Molitor* and *Derderian,* the case is distinguishable on its facts, in that it involved a modification and did not deprive a spouse of a right to equitable distribution of marital assets. Moreover, the presence of the third party in *Livsey* was not required in order to adjudicate the property rights of the parties to the dissolution.

Because no Connecticut case directly addresses the issue of whether the transferee of an alleged fraudulent conveyance may be joined as a party in a dissolution action, we consider cases of other jurisdictions. The prevailing view in the majority of other jurisdictions is that a third person with a claimed interest in property that is the subject of a dissolution action may properly be joined as a party. That rule holds that although the spouses are ordinarily the only proper parties to a dissolution action, joinder or intervention of third parties is permissible where third parties claim an interest in property involved in the proceedings. 63 A.L.R. 3d 373, Divorce-Third Parties' Claims § 2 [a]; see, e.g., *Long* v. *Long,* 88 Cal. App. 2d 544, 199 P.2d 47 (1948); *In re Marriage of Allen,* 691 P.2d 749 (Colo. App. 1984); *Breidenthal* v. *Breidenthal,* 182 Kan. 23, 318 P.2d 981 (1957); *Ravenscroft* v. *Ravenscroft,* 585 S.W.2d 270 (Mo. App. 1979); *Schmidt* v. *Schmidt,* 99 App. Div. 2d 775, 472 N.Y.S.2d 26 (1984). The policy supporting this view is the desirability of avoiding multiple suits and of granting complete relief in a single proceeding.

Several jurisdictions *require* the joinder of a third party claimant in order to dispose of the disputed property, while others allow *permissive* joinder or intervention. See, e.g., *Simmons* v. *Simmons,* 87 Ill. App. 3d 651, 409 N.E.2d 321 (1980); *Alvino* v. *Alvino,* 659 S.W.2d 363 (Mo. App. 1983); *Schmidt* v. *Schmidt,* supra. Both Michigan and Wisconsin limit third party joinder in dissolution cases to those cases alleging conspiracy and fraud committed against a spouse. *Smela* v. *Smela,* 141 Mich. App. 602, 367 N.W.2d 426 (1985); *Dean* v. *Dean,* 87 Wis. 854, 275 N.W.2d 902 (1979).

In the present case, even if we were to follow the more limited Michigan and Wisconsin view, Eannelli would be a proper party. The plaintiff has alleged that her husband fraudulently transferred his corporate stock to Eannelli in order to deny her rights to the property. Eannelli has not disclaimed ownership of the stock and any disposition of the stock by the court in the dissolution action would necessarily affect his interest.

On the basis of the *Molitor* dicta and our agreement with the reasoning of the prevailing view in other jurisdictions, we conclude that Eannelli was properly joined as a party to the dissolution action. We, therefore, limit our holding in *Livsey* to its facts and overrule it to the extent that it contravenes *Molitor.*

I

Eannelli first claims that the trial court should have granted his motion to dismiss for two reasons. He argues that the prior pending civil action deprived the court of subject matter jurisdiction and that the court lacked personal jurisdiction over him.

Although a motion to dismiss is the proper vehicle to raise the issue of a prior pending action, the doctrine does not truly implicate subject matter jurisdiction. *Halpern* v. *Board of Education,* 196 Conn. 647,

652 n.4, 495 A.2d 264 (1985). It may not, therefore, as is true in the case of classic subject matter jurisdiction, always be raised at any time. See *Bridgeport* v. *Debek,* 22 Conn. App. 517, 578 A.2d 150 (1990). The defendant's motion to dismiss was not based on the prior pending action doctrine nor did the trial court have an opportunity to consider dismissal on that basis. Although the defendant did, in a summary fashion, raise the issue of the prior pending action in the memorandum of law that accompanied his motion, he did not mention it as an alternate ground for dismissal during a full scale hearing on his motion. We nevertheless review his claim because he did raise it in his memorandum, because the transcript indicates that the trial court was aware of the allegations in the complaint in the prior pending action, and because the record on appeal is adequate for a review.

The dissolution action was instituted more than three years prior to the civil action. The complaint in the dissolution action was amended to allege a count of fraudulent conveyance against the defendant after the separate civil action was filed. The defendant claims, therefore, that the civil case was a prior pending action subjecting count two of the dissolution case to dismissal.

Under the prior pending action doctrine, the pendency of a prior suit between the same parties brought to obtain the same end will generally render the latter suit amenable to dismissal. *Halpern* v. *Board of Education,* supra, 652; *Henry F. Raab Connecticut, Inc.* v. *J. W. Fisher Co.,* 183 Conn. 108, 112, 438 A.2d 834 (1981); *Hatch* v. *Spofford,* 22 Conn. 485, 494 (1853). When two separate suits are virtually alike, the second suit is deemed unnecessary, oppressive and vexatious. *Halpern* v. *Board of Education,* supra; *Hatch* v. *Spofford,* supra. To determine the applicability of the

doctrine, we must examine the pleadings to ascertain whether the actions are virtually alike. *Halpern* v. *Board of Education,* supra, 653.

The allegations against Eannelli in the civil action, although more specific and detailed, are essentially identical to the allegations in count two of the dissolution action. While an additional defendant, Stamford Color Photo, Inc., is named in the civil action, the allegations against it are actually made against Gaudio, acting for the corporation. The same allegations are made directly against Gaudio in the dissolution action. Superficial differences in the parties are not enough to overcome dismissal under the prior pending action doctrine. *Halpern* v. *Board of Education,* supra, 651; *Northern Homes Distributors, Inc.* v. *Grosch,* 22 Conn. App. 93, 97, 575 A.2d 711 (1990).

In the dissolution action, the plaintiff seeks a dissolution of the marriage, alimony, an equitable property division and attorney's fees. She also seeks a determination that Gaudio is the owner of the corporate stock and an order that Eannelli transfer the stock to him. In the civil action, the plaintiff seeks to enjoin the corporation and its officers and agents from conveying, encumbering or disposing of corporate assets, a decree setting aside the alleged conveyance, and a judgment that the conveyance was null and void and that Gaudio owns all the shares. She also seeks $400,000 in damages.

The difference in the relief requested in the two actions is not dispositive. *Halpern* v. *Board of Education,* supra, 653. " '[T]he fact that different relief is sought does not prevent [dismissal] of a second action adjudicating the *same underlying rights.*' (Emphasis added.) 1 Stephenson, Conn. Civ. Proc. (2d Ed.) § 104b, p. 423." Id., 655. It is clear that both actions seek adjudication of the same underlying issue concerning Eannelli's ownership of the corporate stock.

The prior pending action doctrine, however, has evolved as a rule of justice and equity and not as a principle of absolute law. *Halpern* v. *Board of Education,* supra, 652–53; *Hatch* v. *Spofford,* supra. We have already determined that Eannelli was a proper party to the dissolution action. In order for the plaintiff to obtain complete relief in the dissolution action, the fraudulent transfer issue had to be resolved. Moreover, it appears that Eannelli was joined in the dissolution case to obtain a full and fair adjudication of the plaintiff's rights to marital property, and not for purposes of harassment or oppression. We conclude, on the basis of equitable principles, that count two of the dissolution action should not have been dismissed because of the prior pending civil action.

Eannelli next contends that he did not have sufficient contacts with the state of Connecticut to justify the court's assertion of personal jurisdiction over him. In an affidavit submitted to support his motion to dismiss, Eannelli stated that his only contact with Connecticut was a single trip to the state to view the corporate assets. He asserted that all the negotiations for the purchase of the stock occurred in New York, and that the purchase was an arms length transaction for fair value. The trial court, *Landau, J.,* specifically found that it had jurisdiction over Eannelli under General Statutes § 52-59b (a) (1)[2] because he had transacted business within Connecticut. It found that at least two of the "facts" stated in Eannelli's affidavit were untrue, but did not specify which statements were disbelieved. The court also questioned the credibility of the witnesses at the hearing on the motion to dismiss.

[2] General Statutes § 52-59b provides in pertinent part: "(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, or foreign partnership, or his or its executor or administrator, who in person or through an agent: (1) Transacts any business within the state . . . ."

Our analysis of Eannelli's challenge to personal jurisdiction involves a two-part inquiry. *Hart, Nininger & Campbell Associates, Inc.* v. *Rogers,* 16 Conn. App. 619, 624, 548 A.2d 758 (1988). "The first inquiry is whether the applicable state long arm statute authorizes the assertion of jurisdiction over the [defendant]; and, if the statutory requirements are met, whether the exercise of in personam jursidiction would violate constitutional principles of due process." Id.; *Frazer* v. *McGowan,* 198 Conn. 243, 246, 502 A.2d 905 (1986). The plaintiff bears the burden of establishing facts pertaining to personal jurisdiction. *Lombard Bros., Inc.* v. *General Asset Management Co.,* 190 Conn. 245, 250, 460 A.2d 481 (1983); *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 54, 459 A.2d 503 (1983); *Chevette* v. *U-Haul Co. of New Mexico,* 7 Conn. App. 617, 621, 510 A.2d 206 (1986).

Connecticut courts may assert personal jurisdiction over a nonresident defendant under General Statutes § 52-59b (a) (1), as long as that defendant transacts business within the state. The term "transacts any business" has been construed to embrace "a single purposeful business transaction." *Zartolas* v. *Nisenfeld,* 184 Conn. 471, 474, 440 A.2d 157 (1981). In determining whether Eannelli's contacts constitute the transaction of business within the state, we do not apply a rigid formula but balance considerations of public policy, common sense, and the chronology and geography of the relevant factors. Id., 477.

In light of these standards, we conclude that the trial court was correct in finding that Eannelli had transacted business in Connecticut within the meaning of § 52-59b (a) (1). Testimony at the hearing on Eannelli's motion to dismiss indicated that he had traveled to Connecticut at least once and that he had reached an oral agreement to purchase the stock of a Connecticut cor-

poration in this state. By purchasing the stock, he purportedly became the sole stockholder of a close corporation the only asset of which was a parcel of commercial real estate in Connecticut. These facts reasonably support the conclusion that Eannelli's purposeful Connecticut related activity sufficiently brought him within the reach of the applicable long arm statute. See *Hart, Nininger & Campbell Associates, Inc.* v. *Rogers*, supra, 625.

We next consider whether these same facts satisfy the minimum contacts requirement of the due process clause. "The United States constitution allows state courts to assert jurisdiction over nonresident defendants only when minimum contacts exist between the defendant and the forum state. The nature of these contacts must be such that requiring the defendant to defend in the forum state does not offend 'traditional notions of fair play and substantial justice.' *World-Wide Volkswagen Corporation* v. *Woodson*, [444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)]; *International Shoe Co.* v. *Washington*, [326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 2d 95 (1945)]; *Milliken* v. *Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 2d 278 (1940)." *Frazer* v. *McGowan*, supra, 252.

Our review of the record convinces us that Eannelli's contacts with Connecticut were sufficient to satisfy due process requirements. Eannelli argues that the mere ownership of stock in a corporation does not justify the exercise of personal jurisdiction over the owner, and that subjecting the owner to such jurisdiction would offend notions of fair play and substantial justice. Eannelli's argument might be persuasive if the transaction at issue involved the relatively routine and anonymous purchase of publicly traded stock through a broker or agent. Here, however, Eannelli purchased directly from a Connecticut resident all of the stock in a close cor-

poration whose sole asset was Connecticut real estate. He traveled to Connecticut at least once to view this property, entered into an oral agreement to purchase the stock while in this state, and retained two Connecticut residents as officers of the corporation to manage and sell the property.

On the basis of these facts, we conclude that Eannelli should have foreseen that he might be called to Connecticut to defend a suit arising from his ownership of the corporation. The trial court properly denied Eannelli's motion to dismiss based on personal jurisdiction.

## II

Eannelli next claims that he was entitled to a jury trial as a matter of right, and that the trial court improperly granted the plaintiff's motion to strike the case from the jury list. On June 14, 1988, Eannelli filed a general denial. Nine days later, after two days of trial, he filed a claim for the jury docket. The plaintiff subsequently filed a motion to strike the case from the jury list, which the court granted because Eannelli had previously proceeded with the court trial without objection.[3]

Eannelli argues that because he filed the claim within ten days of joining an issue of fact, he is entitled to a jury trial pursuant to General Statutes § 52-215 and Practice Book § 308. General Statutes § 52-215 provides in pertinent part: "The following-named classes

---

[3] The court essentially found that Eannelli had waived his right to claim the case for a jury trial by participating in the trial without objection. There was also a dispute between the parties about whether Eannelli had paid the required fee within the statutory ten day period. This issue was never resolved at trial. On appeal, the plaintiff claims that Eannelli waived his right to a jury trial because of an alleged late payment. Because we conclude that Eannelli did not have a right to a jury trial in this case, we do not reach the issue of waiver.

of cases shall be entered in the docket as jury cases upon the written request of either party made to the clerk within thirty days after the return day . . . civil actions involving such an issue of fact as, prior to January 1, 1880, would not present a question properly cognizable in equity . . . . When, in any of the above-named cases an issue of fact is joined, the case may, within ten days after such issue of fact is joined, be entered in the docket as a jury case upon the request of either party . . . ."

Practice Book § 308 provides that "[a] case presenting issues both in equity and law may be claimed for the jury list, but, unless the court otherwise orders, only the issues at law shall be assigned for trial by the jury." A defendant has a right to a jury trial under General Statutes § 52-215, therefore, only if a plaintiff's cause of action is not equitable within the terms of that statute. Practice Book § 308 allows a party to claim a jury trial in a case presenting both legal and equitable issues, but provides for a jury trial on only the legal issues. The dispositive issue, therefore, is whether the plaintiff's complaint presents legal or equitable claims.

It is well settled that there is no right to a jury trial in an equitable action. *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 50, 578 A.2d 1054 (1990); *Texaco, Inc.* v. *Golart*, 206 Conn. 454, 458, 538 A.2d 1017 (1988); *United States Trust Co.* v. *Bohart*, 197 Conn. 34, 44–45, 495 A.2d 1034 (1985); *Franchi* v. *Farmholme, Inc.*, 191 Conn. 201, 209–11, 464 A.2d 35 (1983). Whether the right to a jury trial attaches in an action presenting both legal and equitable issues depends on the relative importance of the two types of claims. *Texaco, Inc.* v. *Golart*, supra, 459; *United States Trust Co.* v. *Bohart*, supra, 45. In an action that is essentially equitable, the court may determine incidental issues of fact without a jury. *United States*

*Trust Co.* v. *Bohart,* supra; *Doris* v. *McFarland,* 113
Conn. 594, 608, 156 A. 52 (1931). "Where, however,
the essential basis of the action is such that the issues
presented would be properly cognizable in an action of
law, either party has the right to have the legal issues
tried to the jury, even though equitable relief is asked
in order to give full effect to the legal rights claimed
. . . ." (Citations omitted.) *National Bank of Com-
merce of New London* v. *Howland,* 128 Conn. 307, 310,
22 A.2d 773 (1941); *United States Trust Co.* v. *Bohart,*
supra. To determine whether the plaintiff's action is
essentially legal or essentially equitable, we examine
the pleadings in their entirety.

In the first count of her second amended complaint,
the plaintiff sought a dissolution of her marriage, along
with alimony and an equitable property division. A dis-
solution of a marriage is essentially an equitable action.
*Gluck* v. *Gluck,* 181 Conn. 225, 228, 435 A.2d 35 (1980).
Further, Eannelli was not a party to the dissolution
and did not request a jury trial on that count.

In the second count, the plaintiff alleged that her hus-
band and the defendant colluded to effect a fraudulent
conveyance of stock. A party complaining of a fraudu-
lent conveyance has, among other remedies, one at law
for damages against both the wrongdoers, and one in
equity to have the fraudulent conveyance set aside.
*Finance Corporation of New England, Inc.* v. *Scard,*
100 Conn. 712, 718, 124 A. 715 (1924); see also 37 Am.
Jur., Fraudulent Conveyances § 167. In the present
case, the plaintiff sought to have the conveyance set
aside in order to include the stock or proceeds from
the sale of the stock in the marital estate. She is not
seeking damages or any other form of legal relief
against Eannelli. While the form of the relief sought
is not dispositive; *United States Trust Co.* v. *Bohart,*

supra; *Franchi* v. *Farmholme, Inc.*, supra, 211; it is certainly a relevant factor. We conclude that the plaintiff's cause of action is essentially equitable.

It is true that the adequacy of the consideration in an action to set aside a fraudulent conveyance is an issue of fact. General Statutes § 52-218[4] gives the court in an equitable action the power to submit issues of fact to a jury upon application of a party. The statute is discretionary, however, and does not create a right to have issues of fact tried by a jury in an equitable action. " '[I]n the absence of a constitutional or statutory provision, a jury forms no part of the equity system . . . under that system the court has the power to determine all issues, and . . . no party is entitled as of right to have any issue tried by a jury.' *Meriden Savings Bank* v. *McCormack*, 79 Conn. 260, 262, 64 A. 388 (1906); see *Savings Bank of New London* v. *Santaniello*, 130 Conn. 206, 209, 33 A.2d 126 (1943)." *Franchi* v. *Farmholme, Inc.*, supra, 210. We conclude that the court was correct in granting the plaintiff's motion to strike the case from the jury list.

### III

Eannelli next claims that the trial court failed to consider Gaudio's contribution to the acquisition and appreciation in value of assets prior to the Gaudios' marriage and after their separation, as required by General Statutes § 46b-81 (c). While the plaintiff has not directly challenged Eannelli's standing to appeal this issue, we address it, sua sponte. "In all civil actions a requisite element of appealability is that the party claiming error be 'aggrieved' by the decision of the trial court." *Milford* v. *Local 1566*, 200 Conn. 91, 96, 510 A.2d 177 (1986); see General Statutes § 52-263. The test for

---

[4] General Statutes § 52-218 provides: "Upon the application of either party, the court may order any issue or issues of fact in any action demanding equitable relief to be tried by a jury of six."

determining aggrievement is twofold: first, the party claiming aggrievement must demonstrate a specific personal and legal interest in the subject matter of the decision; and second, that party must establish that this personal and legal interest has been specially and injuriously affected by the decision. *Milford* v. *Local 1566,* supra; *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 493, 400 A.2d 726 (1978). "Mere status as a party or a participant in the proceedings below 'does not in and of itself constitute aggrievement for the purposes of appellate review.' *Hartford Distributors, Inc.* v. *Liquor Control Commission,* 177 Conn. 616, 620, 419 A.2d 346 (1979)." *Milford* v. *Local 1566,* supra, 96.

In the present case, Eannelli has demonstrated a personal and legal interest in the corporate stock that is the subject of the fraudulent conveyance allegations in count two of the plaintiff's complaint. That interest, however, does not extend to the dissolution of the Gaudios' marriage or to the related financial orders. It is true that the corporate stock is Gaudio's only significant asset, and that the amount of lump sum alimony awarded was based primarily on the value of that asset. The court's ruling on the fraudulent conveyance count, however, is entirely independent of the ruling on the dissolution count. We conclude that Eannelli has no standing to raise any claims relating to the dissolution or the financial orders involving the parties to the dissolution. See *Crozier* v. *Zaboori,* 14 Conn. App. 457, 459 n.2, 541 A.2d 531 (1988). We decline, therefore, to review the defendant's claim.

IV

Eannelli next claims that the trial court should not have ruled on the fraudulent conveyance allegations because of the absence of an indispensable party. He argues that Chris Masterson, a purported purchaser of the stock, was required to be joined as a defendant

for the proper disposition of the fraudulent conveyance claim, and that the court, therefore, lacked jurisdiction to adjudicate that claim.[5] The plaintiff argues that the absence of the party did not affect the court's jurisdiction and that Eannelli waived this claim by not filing a motion to strike count two for nonjoinder of parties pursuant to Practice Book § 152. The plaintiff asserts, therefore, that this court should not review Eannelli's claim.

Ordinarily, an objection predicated on a claim of non-joinder of a necessary or indispensable party does not go to the jurisdiction of the court. 59 Am. Jur. 2d, Parties § 260. Unless a defendant promptly raises the question of nonjoinder pursuant to applicable rules of practice, any such objection is deemed to have been waived, and cannot be raised at a later stage of the proceedings. Id., § 264; see *Commercial Discount Co.* v. *Plainfield,* 120 Conn. 274, 279, 180 A. 311 (1935). When, however, a suit cannot be disposed of properly on its merits in the absence of an indispensable party, the objection is not waived by failure to assert it in a motion to strike and may be raised on appeal. 59 Am. Jur. 2d, Parties § 264; see *Foote* v. *Branford,* 109 Conn. 358, 361, 146 A. 723 (1929) (court cannot grant remedy sought in the absence of a necessary party). Because Eannelli claims that the absent party was indispensable to a full and fair adjudication of the fraudulent conveyance count, we review his claim on its merits.

Parties have been termed indispensable when their interest in the controversy is such that a final decree cannot be made without either affecting that interest

---

[5] He also claims that Stamford Color Photo, Inc., is an indispensable party because the trial court ordered that its assets be transferred to an escrow account pending execution of judgment. Because Eannelli and the corporation stipulated to this transfer, however, we do not consider the merits of his claim.

or leaving the controversy in such condition that its final disposition may be inconsistent with equity and good conscience. *Sturman* v. *Socha,* 191 Conn. 1, 6, 463 A.2d 527 (1983); *Standard Mattress Co.* v. *Hartford,* 31 Conn. Sup. 279, 288, 329 A.2d 613 (1974). Eannelli contends that Masterson is an indispensable party because, he alleges, Masterson owns some of the stock in the corporation.

While Eannelli did not file a motion to strike on the basis of nonjoinder, the issue of Masterson's absence was discussed on the record. In its memorandum of decision, the trial court stated that "the suggestion by [Eannelli] that Mr. Masterson was a necessary party was unfounded." To support this conclusion, the court noted that both Gaudio and another witness had testified that Eannelli had purchased all of the stock in the corporation. It is true that Gaudio later testified that both Eannelli and Masterson had purchased stock. It is also true that some of the checks introduced as evidence that were allegedly used to purchase the corporate stock bore the name of Chris Masterson as purchaser. The contract for the purchase and sale of the stock, however, was signed only by Gaudio and Eannelli, and Gaudio testified that Masterson was never present during negotiations for the transaction.

The trier of fact is privileged to adopt whatever testimony it believes to be credible. *Transportation Plaza Associates* v. *Powers,* 203 Conn. 364, 378, 525 A.2d 68 (1987). It may disbelieve a witness as to part of his testimony and accept it in other respects. *State* v. *Haddad,* 189 Conn. 383, 389, 456 A.2d 316 (1983). Where the evidence is in conflict, its probative force is determined by the trier. *Bowman* v. *1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 257, 524 A.2d 610 (1987). In the present case there was sufficient evidence

to support the conclusion that Masterson did not purchase any of the corporate stock and was not, therefore, an indispensable party to the litigation.

## V

Eannelli's next two claims challenge the sufficiency of the evidence on the fraudulent conveyance count.[6] Specifically, he claims that the plaintiff alleged only actual fraud in her complaint and that she failed to prove either actual or constructive fraud by clear and convincing evidence.

General Statutes § 52-552, Connecticut's fraudulent conveyance statute, provides: "All fraudulent conveyances . . . made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only . . . to whom such debt or duty belongs." Under this statute, a person wishing to avoid an alleged fraudulent conveyance has the burden of proving either constructive fraud or actual fraud. *Patrocinio* v. *Yalanis,* 4 Conn. App. 33, 35, 492 A.2d 215 (1985). To prove constructive fraud, a plaintiff must show that the conveyance was made without substantial consideration and that the conveyance rendered the transferor unable to meet an obligation to the plaintiff. Id.; *Zapolsky* v. *Sacks,* 191 Conn. 194, 200, 464 A.2d 30 (1983). Actual fraud requires a showing that the conveyance was made with a fraudulent intent and that the transferee of the property participated in the fraud. Id. In either instance, fraud must be proven by clear and convincing evidence. *Patrocinio* v. *Yalanis,* supra.

---

[6] Eannelli claims that the plaintiff failed to establish a prima facie case of fraudulent conveyance and that she failed to prove a fraudulent conveyance by clear and convincing evidence. Since both claims essentially challenge the sufficiency of the plaintiff's evidence, we treat them together for purposes of this appeal.

The plaintiff's complaint specifically alleges that the stock was sold for a "grossly inadequate amount" and that the proceeds of the sale "have been dissipated by [Gaudio] and said proceeds are no longer in his possession and ownership." While it does not specifically allege that the transfer rendered Gaudio insolvent or unable to meet his obligation to the plaintiff, this is not an appropriate requirement where the fraudulent conveyance claim is joined with a dissolution claim. The proper question in this context is whether, after the institution of a dissolution action, the conveyance removed property from the marital estate that would otherwise have been subject to claims of equitable distribution. See *Derderian* v. *Derderian,* supra. We conclude that the plaintiff has sufficiently alleged both constructive and actual fraud.

In its memorandum of decision, the court held that the plaintiff had established by clear and convincing evidence that the conveyance was fraudulent. That conclusion was supported by several subordinate findings. The court found that the dissolution action was pending at the time of the conveyance, that the consideration was not substantial, and that the purpose of the sale was to place the marital estate beyond the plaintiff's reach. It also found that Eannelli was not a bona fide purchaser for value.

Eannelli argues that these findings do not support a conclusion of either actual or constructive fraud, and, alternatively, that the findings are not supported by the record. Since the plaintiff will prevail if she has satisfied her burden of proving either constructive or actual fraud; *Bizzoco* v. *Chinitz,* 193 Conn. 304, 312, 476 A.2d 572 (1984); *Derderian* v. *Derderian,* supra, 528; we need not consider them both.

We first address Eannelli's claim that the trial court did not make a finding of constructive fraud. Specifically, he contends that the court failed to find that the stock transfer rendered Gaudio "insolvent," which, he claims, is an element of constructive fraud. We have already concluded, however, that in the context of a dissolution action, such a finding is not required. "While neither marriage nor an action for dissolution serves, in and of itself, to transfer an interest in property from one spouse to another . . . the institution of judicial proceedings serves, at least between the parties, to preserve the status quo from impairment by fraud." (Citations omitted.) *Molitor* v. *Molitor,* supra, 534. In other words, once a dissolution action is filed, any transfer of assets for insubstantial consideration reduces the amount of the marital estate and frustrates the equitable distribution of property. This is particularly true in the case where a property settlement or lump sum alimony is sought instead of periodic alimony. We conclude that the trial court had sufficient evidence to support a finding of constructive fraud.

Eannelli also claims that there is no evidentiary basis for the court's finding that the consideration was not substantial. He contends that the purchase price of $250,000 with net proceeds of $110,000 was clearly substantial, and that the record was devoid of evidence of the fair market value of the stock at the time of the transfer.

The trial court made several subsidiary findings supported by the trial transcripts and exhibits that refute this assertion. The court found that Gaudio had received an offer of $625,000 for the building owned by the corporation before allegedly selling the stock for $250,000. It expressly discredited Gaudio's testimony on his reasons for failing to consider this offer. Furthermore, it questioned whether any payment had, in fact, ever been

made, as evidenced by its expressed belief that no sale had occurred[7] and by other statements in its memorandum of decision.[8]

It is clear that the trial court reached its conclusion on the issue of consideration on the basis of the evidence presented and its evaluation of the credibility of the witnesses. The weight given the evidence is within the sole province of the trial court; *Cookson* v. *Cookson,* 201 Conn. 229, 244, 514 A.2d 323 (1986); as is the determination of the credibility of witnesses. *Jefferson Garden Associates* v. *Greene,* 202 Conn. 128, 138, 520 A.2d 173 (1987). We will not interfere with these determinations absent a clear abuse of discretion. *Cookson* v. *Cookson,* supra. We conclude that the trial court was well within its discretion in finding that the alleged conveyance of stock was fraudulent.

## VI

Eannelli next claims that the trial court should have declared a mistrial because of numerous "procedural irregularities" that deprived him of a fair trial. He did not move for a mistrial, and seeks plain error review pursuant to Practice Book § 4185.

We ordinarily will not review a claim that a trial court should have declared a mistrial when no such request

---

[7] The court stated that "either there was no sale of the stock at all, which is what the court really believes, from Mr. Gaudio to Mr. Eannelli, or if there was such a sale, it was fraudulent as to the plaintiff . . . ."

[8] The court found that the alleged method of paying for the stocks was as follows: "[E]ither Mr. Eannelli or [another], depending on which day Mr. Gaudio was testifying, met him at a bank somewhere in southern Connecticut and proceeded to give him a cashier's check for one of the installments for the stock. On one such occasion a cashier's check for $8500 was obtained by [a third party] with funds from his account, given to Mr. Gaudio who endorsed it, and it was then turned into two cashier's checks, one in the amount of $4500 and the other in the amount of $4000 and deposited it in [the third party's] account." Later in the memorandum, the court stated that Mr. Gaudio was not a totally credible witness.

was made at trial. *Cameron* v. *Cameron,* 187 Conn. 163, 168, 444 A.2d 915 (1982). Only in exceptional circumstances, such as where an error is apparent on the face of the record; *Batick* v. *Seymour,* 186 Conn. 632, 641, 443 A.2d 471 (1982); or where the interests of justice require it; *Magnan* v. *Anaconda Industries, Inc.,* 193 Conn. 558, 577–78, 479 A.2d 781 (1984); will we invoke our power to review an unpreserved claim. Eannelli's assertions have failed to convince us that his claim is suitable for plain error review.

In a footnote in his appellate brief, Eannelli recites a hodgepodge of over twenty of these alleged procedural irregularities, unsupported by any analysis or legal authority. In his reply brief, the defendant once again asserts that he was prejudiced by several occurrences at trial, and once again fails to provide any legal analysis or support. Instead, he includes several citations to cases that have granted plain error review for a variety of reasons.

" 'Bare assertions of error without citation to legal authority may constitute an abandonment of a claim'; *State* v. *Chauvin,* 8 Conn. App. 307, 311, 512 A.2d 969 (1986); *State* v. *Knighton,* 7 Conn. App. 223, 226–28, 508 A.2d 772 (1986)." *Echols* v. *Balck,* 9 Conn. App. 620, 622, 520 A.2d 651 (1987). We decline, therefore, to consider Eannelli's claim that the court should have declared a mistrial, as this claim evades meaningful appellate review. Id.

## VII

Eannelli next argues that the trial court should have granted him a continuance to obtain an appraisal of the property owned by Stamford Color Photo, Inc. On June 14, 1988, Eannelli's counsel requested a continuance, asserting that he had been involved in the case for only a little over a month and had not yet had an

opportunity to obtain an appraisal. The court responded that it did not understand why the plaintiff could not present her case on the dissolution count, thus giving Eannelli time to get an appraisal. On July 21, 1988, after the plaintiff had rested, Eannelli's counsel again requested a continuance of two weeks in order to obtain the appraisal. After learning that the appraisal had not been ordered until the prior week, the court declared that it was too late and denied Eannelli's request.

Practice Book § 280 provides in relevant part: "The court may refuse to continue . . . if there is no good reason why the party making the request did not make proper preparation to have the witness present . . . . The same rule shall apply where the motion is grounded on the want of any material document or other evidence that might be used at trial." A trial court has broad discretion in granting or denying motions for continuance and "[e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made." *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 538, 429 A.2d 801 (1980). In deciding a motion for continuance, a trial court may consider all the circumstances of the particular case, including unreasonable delay, fairness to the opposing party, and the negligence of the moving party. *Rusch* v. *Cox*, 130 Conn. 26, 31–32, 31 A.2d 457 (1943).

In the present case, we conclude that the trial court did not abuse its discretion in denying the continuance on the basis of Eannelli's unexplained delay in ordering an appraisal.

## VIII

Eannelli's final claim raises two challenges to the remedy fashioned by the court. First, he claims that the court's order directing him to transfer all of the corporate stock back to Gaudio was in violation of Gen-

eral Statutes § 52-552. He argues that because the judgment for the plaintiff was for only $240,000, Gaudio was unjustly enriched to the extent of the difference between that amount and the value of the corporation.[9]

General Statutes § 52-552 provides that a fraudulent conveyance shall be "void as against those persons only" to whom a debt is owed and who have been defrauded. "Title gained by a fraudulent conveyance is valid as between the parties and is voidable at the suit of a creditor to the extent necessary to satisfy the amount due the creditor." *Doty* v. *Wheeler,* 120 Conn. 672, 679, 182 A.2d 468 (1936).

From a review of the court's memorandum of decision, it is apparent that the court found the conveyance fraudulent as to only the plaintiff. Moreover, it ordered Gaudio to transfer the stock to the plaintiff's attorney to be placed in escrow pending execution of the judgment. Its orders are not clear, however, on whether Gaudio was to become the record owner of the stock, or how to dispose of the stock after satisfaction of the judgment in favor of the plaintiff. The judgment, therefore, must be corrected because there is error in its form. See id.

Eannelli's second challenge to the court's remedy concerns the order directing that the mortgages held by the corporation from the sale of the building to the homeless shelter be turned over first to Gaudio and then to the plaintiff's attorney to be placed in escrow. Eannelli argues that because the corporation was not a party to this action, the order constituted a deprivation of a substantial property right without due process of law in violation of both the federal and state constitutions.

---

[9] He also argues that the court should have reduced that amount by $90,000, the value of an inheritance in which Gaudio apparently had an interest. The record indicates that the status of the inheritance was unclear and was still involved in probate hearings.

On March 7, 1988, while the dissolution action was pending and before the sale of the building to the homeless shelter, the court, *Dean, J.,* rendered an order in the civil action pursuant to a stipulation of the parties. In that stipulation, the parties agreed that the corporation would sell its property to the homeless shelter only on certain conditions. One such condition was that "[t]he balance of the sale proceeds, consisting of approximately $575,000 more or less, whether in the form of a mortgage from the buyers to the sellers, or in cash, or partially in each, shall be held in escrow . . . to respond to the judgment of the Superior Court [in the dissolution action] . . . ."

In its memorandum of decision, the court in the dissolution action found that Eannelli and Gaudio had not complied with either that order or a similar order that had been rendered in the dissolution action. As part of its judgment, therefore, it ordered once again that the mortgages be placed in escrow.

Both Eannelli and Stamford Color Photo, Inc., were parties to the civil action and to the stipulation. They were represented by counsel and had a full and fair opportunity to litigate the issues contained in the stipulation. Although the corporation is not a party in the present case, it stipulated to the very condition contained in the order that Eannelli now attacks, namely, a transfer of corporate assets to an escrow account to respond to the judgment in the dissolution action. The parties to the stipulation were bound by it, and Eannelli is barred from challenging the issue on appeal. See *Connecticut Water Co.* v. *Beausoleil,* 204 Conn. 38, 48–49, 526 A.2d 1329 (1987).

The judgment is reversed in part and the case is remanded with direction to correct the judgment to set aside the conveyance to the defendant Eannelli only

so far as it operates to obstruct the plaintiff in the enforcement of her judgment, and to order that the corporate stock and the mortgages be returned to Eannelli after satisfaction of the plaintiff's judgment; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.