[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action instituted by the plaintiff wife, Janice Martin, against the defendant husband, Kenneth Martin, seeking a dissolution of their marriage. One of the parties has resided in the State of Connecticut for more than one year prior to the bringing of this action and the court has jurisdiction over the marriage and the parties. Neither party has been a recipient of public assistance during the period of the marriage. The parties were married on November 11, 1983 in Meriden, Connecticut. The parties have two children who have the following names and birth dates: Christopher, October 12, 1987, and Kimberly, September 123, 1989. The parties' marriage has broken down irretrievably. There is no reasonable hope of reconciliation, and the court orders a dissolution of the marriage.
The court has carefully considered the statutory criteria for the granting of a dissolution of marriage, the awarding of custody, visitation, child support, alimony, and attorney's fees, and the dividing of the parties' assets and liabilities as applicable. The court makes the following findings and orders.
As previously indicated, the parties have been married for 15 years. They have been separated since May 1996 when the wife left the marital residence with the children. The wife is 40 years old and has two years of post high school education. After the birth of their first child, the wife remained home taking care of the children and the household needs. Since the separation, the wife has worked various part time jobs. She is presently working 18 hours a week as a desk clerk at Holiday Inn making approximately $7.50 per hour. Her financial affidavit indicates that she earns $145 a week gross and $114 a week net. The wife offered conflicting testimony about why she could not work full time indicating at one point that her children's schedules and needs CT Page 15130 precluded her from working full time and at another point indicating that her injury from an automobile accident precluded her from working full time. The wife did not provide any medical evidence to support her claim that her medical conditions prevented her from full time work. The evidence is insufficient for the court to conclude that the wife is capable of working full time, but the court agrees with the husband that the wife is capable of working more than 18 hours a week. The court also concludes that the wife's future opportunity and capacity to increase her income and acquire future assets are significantly less than the husband's.
The husband is 43 years old and has a bachelor's degree in marketing. In 1995, he suffered two heart attacks for which he was hospitalized, however, there is no evidence that the husband is presently suffering from any medical problems which are substantially impairing his earning capacity. Since the parties' marriage, he has been employed as a salesman for the A.W. Chesterton Company. According to his financial statement, he earns approximately $1,342 a week gross and $967 net per week from this employment. During the marriage, his income ranged as high as $90,000 to $100,000 a year, but in 1995 his sales territory was decreased by his employer and this decrease also operated to decrease his earnings. There is no evidence whatsoever to support the wife's claim that the husband colluded with his employer to orchestrate a decrease of his income in order to gain advantage over her as part of these divorce proceedings which were instituted in 1996. The court also rejects the wife's claim that the husband is deliberately spending more time with the children at this time in order to reduce his work time and his earnings.
The husband became fairly successful at his sales position as indicated by his earnings. However, he spent long hours at work away from the home, made some untimely investments decisions regarding real property purchases, and especially after 1989, experienced significant problems managing the family's finances. The financial difficulties caused the husband to fail to meet debt obligations in order to reserve money for his personal or the family's living expenses and he also began to rely on loans to meet the expenses, which all accumulated to create more debts and defaults. Although the court rejects the wife's claim that she was entirely oblivious to any of the family's financial difficulties, the court is persuaded that the husband was primarily responsible for managing the family finances. CT Page 15131
The wife did not bring any significant assets into the marriage. Prior to the marriage, the husband owned two condominiums; one was in Crown Village in Meriden and the other one was on Kensington Avenue in Meriden. The Kensington Avenue property was used as the marital home and was sold in 1987. The proceeds were used to purchase two more condominiums: 81 Summer Hill Road in Wallingford, which became the family residence; and 41 Summer Hill Road in Wallingford, which became a rental unit. Both these condominiums had separate garage units. The parties purchased the Summer Hill condominiums apparently with the intent to eventually sale these units at a profit in order to purchase a larger, one family home. However, the real estate market turned and the value of these properties depreciated substantially rather than appreciating. The parties also purchased a vacation condominium in Vermont in 1983, and they purchased a lot in Southington, Connecticut, in 1985.
As to all of these properties, only two remain at the present time: 81 Summer Hill Road, with the separate garage unit, and the Vermont condominium. The husband resides at 81 Summer Hill Road. This property has a value of approximately $90,000 and an outstanding mortgage balance of approximately $126,000. The Vermont condominium is presently under foreclosure by its condominium association. The Crown Village Condominium was foreclosed in 1997, after the institution of the divorce proceedings. The husband testified that while there was no deficiency judgment obtained in this foreclosure, there was a deficiency representing a debt forgiveness resulting in a tax liability to him. 41 Summerhill Road has recently been lost through a foreclosure action instituted by the condominium association. The Southington lot and the garage associated with 41 Summerhill Road were both sold by the parties to help them meet their expenses.
As indicated previously, 81 Summerhill Road has no equity value. The parties disagree about the value of the separate garage associated with this condominium, with the husband listing the value as $1,500 and the wife listing the value as $8,000. Neither party offered any expert testimony nor any other particularly probative evidence to assist the court to resolve this dispute about the value of the garage. The court finds that the husband has had more contact and familiarity with this and the other properties and credits his testimony that the value of the garage is $1,500. CT Page 15132
The court also credits the husband's testimony that the Vermont condominium has a value of approximately $30,000. However, his claim as indicated on his financial statement that $30,000 of "mortgage" debt exists on this property is inaccurate and incomplete. First, his testimony indicates that there are liens on this property, but few of them are mortgages. After extensive examination, the husband was never able to explain how these encumbrances totaled $30,000. The encumbrances on the property include a $4,500 lien placed on the property by the husband's mother in 1998 and another lien in the form of a "note" having a face amount of $15,000 also placed on the property by the husband's mother in 1996. Both of these "liens" appear to be consensual liens which the husband allowed his mother to place on this property. The $15,000 note was originally signed by the husband in favor of the mother in 1990 and was signed by him again in November 1996 in order to make it a lien against the property. The wife has requested the court to vacate these liens as illegal or fraudulent transfers.
Despite the dubious nature of these liens, in order for the court to void a lien as a fraudulent transfer and divest the transferee of her lien interest, the court must acquire jurisdiction over the transferee by her being made a party to the proceedings so that she may have the opportunity to appear and be heard. See generally, Molitor v. Molitor, 184 Conn. 530 (1981);Gaudio v. Gaudio, 23 Conn. App. 287 (1990); Derderian v.Derderian, 3 Conn. App. 522 (1985). The husband's mother has not been made a party to this lawsuit. Nevertheless, the court may still consider the husband's conduct and may act on his interests regarding this property. Derderian v. Derderian, supra,3 Conn. App. 526-527. These encumbrances were placed on the marital asset after the parties filed an agreement with the court providing that "neither party shall dispose, sell or otherwise alienate any asset without further order of [the] court or agreement of the parties." Additionally, the court finds that the liens were filed to give the husband's mother a preferential advantage over the wife's interest. These liens operated to remove the equity from the only remaining marital asset having any significant equity value, frustrating the court's ability to equitably divide this property as part of the dissolution proceedings. The Vermont property is under foreclosure, but the husband's mother is still in a preferential position to participate in any proceeds that may be generated by a foreclosure of the property and the husband's refusal or inability to pay the condominium fees CT Page 15133 prompted the foreclosure action. Therefore, although the court is without authority to vacate these liens, the court will take these facts into consideration when determining the final orders to be entered in this case.
The wife has a 1991 Honda Prelude that she values at $5,000. The husband has a 1990 Chevrolet Lumina valued at $1,000 and a 1979 Chevrolet Corvette valued at $6,000. The husband also has a 401-k profit-sharing plan valued at $171,580.
As evidenced by the parties' financial statements, they have substantial liabilities. The wife has liabilities approximating $54,000. A significant amount of this debt is for attorneys' fees incurred as part of this action. The wife also shows a joint obligation owed to her mother for $10,360. The husband has liabilities approximating $89,000, which includes $28,000 owed to his mother. The court rejects the wife's argument that the husband has intentionally and deliberately reduced his income, and orchestrated both the accumulation of this debt and the foreclosure of the parties' properties all to undermine her recovery in the divorce proceedings. While the husband must bear a significant amount of the responsibility for this dismal financial situation because of his primary role over the family finances, the wife's view of the matter is colored more by the parties' unfortunate mistrust and animosity for each other rather than the reality of the circumstances. In this regard, the wife's proposed orders do not appreciate that no court orders can alter the fact that the husband has insufficient assets and income to satisfy in any meaningful way the parties' substantial liabilities. On the other hand, the husband's proposed orders do not appreciate that he cannot shield himself from his obligation to support both his wife and children by the enormous debt that he has accumulated.
The wife claims that the marriage broke down because the husband was abusive, mean-spirited and controlling. The evidence indicates that he ridiculed and degraded her in front of family and friends. The husband claims that the wife complained and verbally harassed him relentlessly and incessantly. She became particularly distraught after the death of her father when she began to gravitate more toward her mother and began to spend time away from their home. She started drinking and on one occasion was escorted home by the police. The court finds that both parties contributed to the breakdown of the marriage and that the husband's conduct was the primary cause for the irretrievable CT Page 15134 breakdown of the marriage.
 ORDERS
1. Dissolution of marriage. The court orders a dissolution of the marriage based on the irretrievable breakdown of the marriage.
2. Custody and visitation. Pursuant to the parties' request, the court adopts the October 14, 1997 custody and visitation order previously issued by the court and the parties shall share joint legal and physical custody as provided in the October 14, 1997 order.
3. Child Support. The parties have the equivalent of a shared custody arrangement which represents a criterion for deviating from the support obligations presumed under the child support guidelines. The husband has custody of the children between 40% and 50% of the time. The parties' combined net weekly income is $1162 indicating a total family obligation of $353 per week under the guidelines. Because of the shared custody arrangement, the court rejects the mother's request that the husband pay the support indicated as his percentage under the guidelines; and because of the disparity between the parties' income, the court rejects the husband's request that he pay 50% of the support indicated as his percentage under the guidelines. The court concludes that in determining the amount of support to be paid by the husband in this specific shared custody situation, the court should be guided by the split custody provisions of the guidelines and orders the husband to pay child support in the amount of $300 per week. The husband shall be entitled to take both children as dependents for federal and state tax purposes.
5. Health and life insurance. The husband shall maintain medical insurance for the minor children. All uninsured or unreimbursed medical, dental, orthodontic, ocular, psychological and similar health related expenses shall be shared equally between the parties. The husband shall maintain the life insurance in the face amount presently available to him as indicated on his financial affidavit with the children as irrevocable beneficiaries so long as he is obligated to pay child support. The husband shall aid the wife in securing any COBRA benefits if sought by her, and she shall bear the expenses for such benefits.
6. Alimony. The husband shall pay alimony to the wife in the CT Page 15135 amount of $150 per week for 10 years which shall terminate upon death of either party, the wife's remarriage, or the wife's cohabitation pursuant to statute. Although the court agrees with the husband's position that the wife has a duty to support herself and is capable of working more hours than she is presently working, the court disagrees that consideration of all the applicable factors justifies his request that he not pay alimony. On the other hand, the court rejects the wife's claim that the facts justify that she receive alimony of $500 per week. The evidence does not indicate the husband's ability to pay such an amount of alimony and entirely ignores the wife's obligation and ability to support herself
7. Property divisions. The husband shall receive the 81 Summerhill condominium, the Vermont condominium, and the Chevrolet Lumina and he shall be responsible for all debts, liens and expenses related to these assets and shall hold the wife harmless from and shall indemnify her for all such debts, liens and expenses.
The wife shall receive the garage associated with the 81 Summerhill condominium, the Corvette and the Honda. The court anticipates that the wife will sell the garage and the Corvette and use the proceeds for personal or housing expenses, and therefore, these transfers shall not be dischargeable in bankruptcy. She shall be responsible for all debts, liens and expenses related to these assets and she shall hold the husband harmless from and shall indemnify him for all such debts, liens, and expenses. All other personal property shall remain and belong to the person who currently has possession thereof, except that the husband shall receive possession and ownership of the following within 60 days: an armoire and drop leaf table from the Vermont property; T.V. received from the husband's grandmother; and an antique sewing machine.
The husband's 401-k profit sharing plan as shown on his financial affidavit having a total value of $173,927 shall be divided through a Qualified Domestic Relations Order or such other documents consistent with the terms of these plans. The wife shall receive 55% and the husband shall receive 45% of the funds in the plan.
8. Debt divisions. The wife shall be responsible for the liabilities listed on her financial affidavit and the husband shall be responsible for the liabilities listed on his financial CT Page 15136 affidavit, except that the husband shall be responsible for any liability on the First Union Cash Reserve listed on the wife's financial affidavit as a joint obligation and the wife shall be responsible for any liability on the Union Trust line of credit listed on her financial affidavit as a joint obligation.
9. Counsel fees. The parties shall bear their own fees and costs.
10. The parties shall cooperate with each other in the execution of all documents necessary to effectuate these orders within the next sixty days and the court shall maintain jurisdiction for this purpose.
So ordered this 18th day of December 1998.
Stevens, J.