The court has for its consideration a motion of the co-defendants, James R. and Carol King (husband and wife), to dismiss two counts of the plaintiff's eleven-count complaint, which two counts have been brought against these defendants in their personal capacity. The remaining counts of the complaint are directed against the named defendant, a Florida corporation known as Beverage Service and Equipment, Inc. (BSE). The lawsuit arises out of a 1989 contract between BSE and the named plaintiff (NECP), a Delaware corporation whose principal place of business was in Waterbury. Pursuant to the contract, BSE was to supply and install certain soft drink bottling equipment on premises of the plaintiff in Waterbury. CT Page 5512
As a part of the NECP-BSE contract, the Kings, who are officers and owners of 80% of BSE stock, were required personally to sign an unconditional guaranty in which they agreed, if the defendant corporation failed to deliver the equipment called for by the contract, to refund to the plaintiff all deposits and advance payments which BSE received. The guaranty imposed no duty upon the Kings to provide any goods or services within the State of Connecticut.
The main thrust of the complaint is based on the alleged failure of the defendant to deliver all of the equipment and properly to install the operating lines. The ninth count of the complaint sounds in tortious interference with a business relationship and is directed against both BSE and Mrs. King, while the eleventh count is directed against both Mr. and Mrs. King on what is alleged to be a breach of their contract of guaranty.
The Kings' dismissal motion is predicated on a claimed lack of in personam jurisdiction. They represent themselves to be Florida residents who do no business in Connecticut and own no property in this state. The plaintiff objects to the motion and argues that in personam jurisdiction attaches to the Kings pursuant to Connecticut's long-arm statute, 52-59b, Conn. Gen. Stat. Specifically, the plaintiff asserts that the Kings transacted business within Connecticut and that, in the case of Mrs. King, she committed tortious acts within or without the state which serve as a basis for personal jurisdiction under the statute.
A hearing was held on the corporate defendant's application for a prejudgment remedy which has reference to a counterclaim brought against the plaintiff. Both Mr. and Mrs. King testified at the hearing and through counsel they agree, as does the plaintiff through its counsel, that all of the evidence required to decide the subject motion was presented during the hearing; and neither side wishes to to present additional evidence. Kingsley v. Sadi International Co., 5 Conn. App. 76, 78-79 (1985).
In analyzing the co-defendants' jurisdictional challenge the court makes a two-part inquiry:
 "The first inquiry is whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the defendants, and if the statutory requirements are met, whether the exercise of in personam jurisdiction would violate constitutional principles of due process." Hart, Nininger Campbell Associates v. Rogers, 16 Conn. App. 619, 624 (1988).
1. In order for a court of this state to assert personal jurisdiction over a nonresident defendant pursuant to 52-59b(a)(1) of the General Statutes the burden is upon the plaintiff to establish CT Page 5513 that the defendant transacted business within the state. Gaudio v. Gaudio, 23 Conn. App. 287, 298 (1990).
Although the term "transacts any business" is undefined in the statute (52-59b), our Supreme Court, relying on judicial interpretation of the New York statute, construes the term to embrace "a single purposeful business transaction." Zartolas v. Nisenfeld,184 Conn. 471, 474 (1981). The plaintiff argues that the defendants' guaranty "was essential to allow [their corporation] to secure the Connecticut contract [and resulted] in direct economic benefit to James King and Carol King." It (the personal guaranty) "was in furtherance of the Kings' livelihood and in pursuit of economic gain." Therefore, "[t]here can be little argument that the giving of [such] guaranty was a `business transaction.'" Plt. Supp. Mem., pp. 4, 5.
Obviously, the narrow issue presented is whether the execution of the personal guaranty constituted a single purposeful business transaction within the state such as will support application of Connecticut's long-arm statute (52-59 [b][a][1].) Since the statute was enacted by the legislature using the New York statute as a model, judicial interpretation given to the New York statute has some significance. Zartolas v. Nisenfeld, supra.
In deciding the issue, this court relies for its support on Savin v. Ranier, 898 F. 304 (2d Cir. 1990). There, the defendant, a Kentucky resident, executed a promissory note payable in Connecticut to the plaintiff, a resident hereof. The defendant had never entered Connecticut and was not required to perform any duty within the state. When the defendant defaulted on his payments, the plaintiff brought suit on the note in the District Court of Connecticut. The defendant's appeal to the Court of Appeals was based on his claims that the District Court lacked personal jurisdiction over him and should have granted his motion to dismiss.
In quoting from Zartolas, Chief Judge Oakes endorsed the significance of the New York statute and judicial interpretation thereof. "New York courts interpreting the comparable provision," he writes, "have declined to exercise jurisdiction when the only contact maintained by the defendant with the forum state was that New York was designated as the site for payment on a promissory note . . . . Ranier's only purposeful contact with Connecticut was in obtaining financing for his share of the New York business from a Connecticut resident. Yet as the New York cases make clear, such contact, without more, is insufficient confer jurisdiction under Connecticut's long-arm statute." Id., 306-07. The court concluded that "even if there were statutory authority for jurisdiction . . . exercise of jurisdiction over Ranier would raise due process concerns." Id., 307. Quoting from Hanson v. Denckla, 357 U.S. 235, 253 (1958), the court held that the CT Page 5514 designation of "Connecticut as the place for payment on the note was not an `act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" Id.
A New York appellate court, on facts jurisdictionally similar to those of the instant case, recently reversed a lower court decision denying a defendant's dismissal motion. First Nat. Bank and Trust Co. v. Wilson, 567 N.Y.S.2d 468 (A.D. 1 Dept. 1991). The plaintiff, a New York corporation, sought money on a personal guaranty of the defendant, a resident of Texas. Although the guaranty expressly provided for application of New York law to resolve any dispute, the court, in pertinent part, ruled as follows:
 "Generally, an out-of-state note made payable in New York does not, in and of itself, confer jurisdiction over the non-domiciliary [cases cited]. It has long been held that New York may not extend long-arm jurisdiction over a non-domiciliary who was never physically present in New York, and who never agreed to provide any goods or services here other than a promise to a New York corporation that he would make good if a corporation of another state defaulted on its debt." p. 469.
The decision of the New York court (above) suggests that it might agree, as the instant plaintiff urges, that the giving of a personal guaranty was "a business transaction," at least in the general context. On the contrary, it is quite clear that the court would find that such guaranty, without more, is by no means tantamount to the transaction of business which, with the help of the long-arm, will confer jurisdiction over a non-resident.
The plaintiff attaches importance to language of the guaranty which has reference to the economic benefit which performance of the contract would provide to the Kings. The argument is unpersuasive. The obligation to perform was that of BSE, and any benefit to the Kings would come only indirectly in their capacity as shareholders of the corporation.
It is worth noting again that the guaranty was drafted by the plaintiff's counsel or representative, executed by the Kings in Florida, and, significantly and by its plain language, was to be construed by the law of Florida. (Citicorp International Trading Co., Inc. v. Western Oil Refining Co., 706 F. Sup. 86
(S.D.N.Y. 1989) (choice of law a factor to be considered in making a jurisdictional determination).)
There is no evidence that the matter of the guaranty was negotiated or even discussed during Mr. King's visits to Connecticut. CT Page 5515 The visits, it is clear, were in his capacity as corporate officer and for the purpose of negotiating an agreement between his company and NECP. Plt. Mem. of Law, p. 12. Under such circumstances in personam jurisdiction over a corporate director does not stem in symbiotic-fashion from jurisdiction over the corporation. It is the director's own personal contacts with the forum state which control. Mozes on behalf of General Electric Co. v. Welch, 638 F. Sup. 215, 223 (D. Conn. 1986).
In summary, the plaintiff has failed to establish that the co-defendants transacted business within the State of Connecticut such as would confer in personam jurisdiction based on the allegations of the eleventh count of the complaint.
2. The plaintiff alleges in the ninth count of its complaint that to the co-defendant Mrs. King tortiously interfered with a business relationship which the plaintiff had with a Connecticut lending institution from whom the plaintiff borrowed its working capital. Specifically, it is claimed that Mrs. King, by telephone from Florida, communicated information to UST Bank/Connecticut that deliberately misrepresented the plaintiff's credit and financial security in connection with the BSE contract. The communication, it is claimed, undermined the trust and confidence of the lender in its business relationship with NECP.
The plaintiff objects to the defendant King's motion on the authority of Connecticut's long-arm statute. 52-59b(a)(2) and (a)(3), Conn. Gen. Stat., Rev. 1958 as amended.
A. 51-59b(a)(2) permits a court of this state to exercise personal jurisdiction over a non-resident individual if that person "commits a tortious act within the state." Although there is little or no authority under Connecticut case law, New York's statutorily analogous provision has been the subject of judicial interpretation.
The plaintiff argues that "[a]lthough the call is claimed to originate in Florida, the wrong was performed in Connecticut . . . where the misrepresentations were received and the damage occurred." Plt. Mem. of Law, p. 8. On the strength of New York case law, this court rejects that argument. Regardless of where the harm is suffered, the tort must be committed in Connecticut, and the defendant must be physically present within the state at the time of commission. Roth v. El Al Israel Airlines, Ltd., 709 F. Sup. 487, 490 (S.D.N.Y. 1989); Rolls-Royce Motors, Inc. v. Charles Schmitt Co., 657 F. Sup. 1040, 1052-53
(S.D.N.Y. 1987); Paul v. Premier Electrical Const. Co.,576 F. Sup. 384, 389 (S.D.N.Y. 1983).
The co-defendant's physical presence in Florida when making the telephone call is dispositive of the issue. CT Page 5516
B. 52-59b(a)(3) provides in pertinent part that in personam jurisdiction may attach when a defendant "commits tortious act outside the state causing injury to property within the state . . . if he . . . derives substantial income from . . . services rendered in the state, or expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate . . . commerce."
"When a court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light." Reynolds v. Soffer,183 Conn. 67, 68 (1981).
(1) Resolving the claims which the complaint raises in its ninth count on the above basis and on the basis of the affidavits and evidence presented, the court is unable to conclude that the defendant King's telephone call to the plaintiff's lender institution was other than personal, tortious and reasonably likely to produce consequences to the plaintiff within this state.
The testimony of Mr. King and the affidavit which he and Mrs. King supplied in support of the motion, examined in the light of the applicable standard, satisfy the court that the NECP contract would cause their business to grow and their shareholdings to increase in value. It is reasonable to infer that Mrs. King's office salary and dividend receipts would also experience monetary enhancement, and language of the guaranty lends further support to such conclusion ("Guarantors expect to derive direct economic benefit as a result of the transaction described in the Contact Documents"). In short, there is sufficient support, for the instant purpose, to conclude that the defendant Mrs. King derived substantial revenue from interstate commerce.
(2) That Connecticut's long-arm statute (52-59b[a][3]) confers jurisdiction over Mrs. King satisfies only the first prong of the judicial inquiry. There remains a second prong which denies an exercise of in personam jurisdiction when a violation of constitutional principles of due process is a consequence. Hart, Nininger Campbell Associates v. Rogers, supra. More specifically, "all assertions of state court jurisdiction must be evaluated according to the standards set forth in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny [cases cited]. Those standards, as set out in International Shoe, require that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Standard Tallow Corporation v. Jowdy, 190 Conn. 48, 52 (1983). CT Page 5517
"The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness." U.S. Trust Co. v. Bohart, 197 Conn. 34, 41 (1985). In reference to foreseeability, the issue is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).
Recognizing that it is only minimum contacts which must be shown, the defendant's execution, with her husband, of a personal guaranty which potentially exposed her to financial liability to a Connecticut corporation based on a contract to be performed in Connecticut; the economic benefit to Mrs. King as an officer and shareholder of the company which contracted to perform work in Connecticut; and her personal telephone call to the plaintiff's working capital lender in Connecticut in order to transmit information which bore on financial aspects of the contract (Rose v. Franchetti, 713 F. Sup. 1203, 1209 (N.D. Ill. 1989) ("A single telephone call into Illinois [from Massachusetts] will give rise to Illinois jurisdiction so long as the call constitutes the commission of a tortious act within Illinois.") such contacts, considered in the aggregate, satisfy the foreseeability and fairness test.
In summary, the plaintiff has established in personam jurisdiction over the co-defendant Mrs. King pursuant to 52-59b(a)(3) and based on the allegations of the ninth count of the complaint, and constitutional principles of due process are not offended thereby.
3. The motion of the defendants James R. and Carol King to dismiss the eleventh count of the complaint is granted.
The motion of the defendant Carol King to dismiss the ninth count of the complaint is denied.