[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs Patricia Basta and James Basta initiated this action against the defendant Today's Adoption Agency, Ltd. ("TAA"), a Pennsylvania corporation; Patricia Zuvic, in her individual capacity and as a director of TAA; and Denise Zuvic in her individual capacity and as an employee of TAA. In the first count, sounding in breach of contract against TAA, the plaintiffs allege that on or about October, 1989, the plaintiffs attended a seminar and workshop in Connecticut run by employees of the defendant TAA, in which the plaintiffs were informed by TAA's employees of the services offered by TAA. The plaintiffs were then allegedly induced by the oral and written representations of the Patricia Zuvic and Denise Zuvic to enter a contract with TAA. The terms of the contract required the defendant TAA to perform services necessary to facilitate the plaintiffs, adoption of a child. Specifically, the plaintiffs allege that the defendants promised to place an adoptive child in the plaintiffs' household within thirty-six months of the execution of the contract, or the plaintiffs' money, except for $1,000.00, would be refunded. In consideration for the promised adoption services, the Bastas allegedly paid $13,650.00 to the defendant TAA. The contract was allegedly mailed to Mr. Mrs. Basta in Connecticut, where it was signed by them, and then was mailed to Pennsylvania where it was executed by Patricia Zuvic. CT Page 8515
Within the thirty-six month period of the contract, the plaintiffs were allegedly assigned four children, all of whom were alleged to be non-adoptable, and each assignment therefore failed. No child was adopted by the plaintiffs and despite the plaintiffs' demands, the defendants failed to refund any money as was required by the agreement.
In the second and third counts, the plaintiffs incorporate the allegations of the first count and allege that the defendants Patricia and Denise Zuvic, respectively, breached the terms of the contract they executed as director and employee of the corporation.
In the fifth and sixth counts, the plaintiffs allege causes of action sounding in negligent performance of a contract, in that Patricia and Denise Zuvic failed to use reasonable care in performing their duties under the contract, such as determining the adoptability of the prospective children, and failed to inform the plaintiffs of the unadoptable status of the children as soon as that information was available. As a result of the defendants' actions, the plaintiffs allegedly sustained physical illness, emotional distress and mental anguish.
The eight and ninth counts of the complaint allege causes of action sounding in fraud against the defendants Patricia and Denise Zuvic. The plaintiffs allege that they were induced into the TAA contract to their detriment based on fraudulent misrepresentations and false statements made by Patricia and Denise Zuvic regarding the material terms of the contract. In the eleventh and twelfth counts, brought against the individual defendants, respectively, the plaintiffs allege that the above referenced conduct constitutes a violation of CUTPA, General Statutes § 42-110a, et seq.
Patricia and Denise Zuvic move to dismiss the complaint, arguing that the Connecticut courts lack personal jurisdiction over them. The defendant Today's Adoption Agency, Ltd. (TAA) does not challenge the court's ability to exercise jurisdiction over it. Denise and Patricia Zuvic submitted affidavits in support of the motion to dismiss, representing that they are residents of Pennsylvania and that they have never resided in Connecticut. In addition, they assert that the agency is a Pennsylvania corporation which was formed for the sole purpose of placing children for adoption throughout the United States. CT Page 8516
Patricia and Denise Zuvic also aver that between June of 1988 and October of 1989, TAA presented seminars in Connecticut relating to its adoption services, but that neither of them (Patricia and Denise Zuvic) appeared in Connecticut for the seminars. The individual defendants aver that in October, 1989, the contract at issue was mailed unsigned to the plaintiffs in Connecticut, where the plaintiffs signed it, and it was returned to Pennsylvania where it was executed by Patricia Zuvic on behalf of TAA. Patricia and Denise Zuvic aver that at no time did they enter Connecticut in order to perform or negotiate the contract. Both individual defendants represented that any business they have conducted with Connecticut clients "has been conducted in [their] capacity [as employees or agents] of the Agency and on behalf of the Agency." (Exhibit A in Support of the Motion to Dismiss, ¶ 10; Exhibit B, ¶ 10.) Both represented that they had never conducted any business in Connecticut, in their personal capacity or on their personal behalf. (Exhibit A, ¶ 10; Exhibit B, ¶ 10.)
The motion to dismiss is the proper vehicle to challenge personal jurisdiction. Practice Book § 143; Zizka v. WaterPollution Control Authority, 195 Conn. 682, 490 A.2d 509 (1985). "The motion to dismiss shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record." Practice Book § 143. "Where. . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." Barde v. Board of Trustees, 207 Conn. 59, 62,539 A.2d 1000 (1988). "If the defendant challenges the court's jurisdiction, it is then incumbent on the plaintiff to prove the facts establishing the requisite minimum contacts." StandardTallow Corporation v. Jowdy, 190 Conn. 48, 53, 459 A.2d 503
(1983). "When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction." Id., 54. In meeting this burden of proof, the plaintiff is not required to prove the defendant's liability, but only the commission of acts in relation to the state which justify the court's exercise of jurisdiction. Stephenson, Conn. Civ. Proc. (2nd Ed.) 96, p. 390, citing Nelson v. Miller, 11 Ill.2d 378,143 N.E.2d 673 (1957). CT Page 8517
 [A] challenge to personal jurisdiction involves a two-part inquiry. Hart, Nininger Campbell Associates, Inc. v. Rogers, 16 Conn. App. 619, 624, 548 A.2d 758 (1988). "The first inquiry is whether the applicable state long arm statute authorizes the assertion of jurisdiction over the [defendant]; and, [second,] if the statutory requirements are met, whether the exercise of in personam jurisdiction would violate constitutional principles of due process." Id.; Frazer v. McGowan, 198 Conn. 243, 246, 502 A.2d 905 (1986).
Gaudio v. Gaudio, 23 Conn. App. 287, 298-99, 580 A.2d 1212
(1990).
Jurisdiction over a non-resident defendant is conferred by General Statutes § 52-59b, which provides as follows:
 (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, or foreign partnership, or his or its executor or administrator, who in person or through an agent: (1) Transacts any business within the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state.
The defendants argue in support of the motion to dismiss that the complaint does not allege any activities performed by Patricia and Denise Zuvic on their own behalf or in their individual capacity which would confer personal jurisdiction CT Page 8518 over them as individuals. In opposition to the motion to dismiss, the plaintiffs argue that personal jurisdiction over the individual defendants is conferred by General Statutes § 52-59b
(a)(1) and (3).[1]
In order to confer jurisdiction-over the individual defendants under subsection (a)(1), the plaintiffs must show that the individual defendants, "in person or through an agent, transacted any business within the state." General Statutes §52-59b. The plaintiff failed to offer any evidence indicating that the individual defendants conducted any business in Connecticut on their own behalf. The evidence submitted in support of and in opposition to the present motion indicates that all the activities performed by the individual defendants were performed on behalf of the corporate defendant TAA. The defendants never entered Connecticut while performing the contract. The plaintiffs offered no evidence indicating that the individual defendants personally transacted any business in Connecticut, or had individuals transact business in Connecticut on their behalf. See Hagar v. Zaidman, 797 F. Sup. 132, 137
(D.C. Conn. 1990) (where president of corporation transacted business in Connecticut only on behalf of the corporation, General Statutes § 52-59b(a)(1) did not confer jurisdiction over individual president of the corporation); see also BrossUtilities Service Corp. v. Aboudshait, 489 F. Sup. 1366 (D.C. Conn. 1980) aff'd. 646 F.2d 550 (2d Cir. 1980). The evidence indicates that the defendant TAA had employees conduct a seminar in Connecticut on its behalf, not on behalf of the individual defendants. Accordingly, the plaintiffs have failed to sustain their burden of proving jurisdiction over the defendants based on General Statutes § 52-59b(a)(1).
The plaintiffs also rely on General Statutes § 52-59b
(a)(3). Under General Statutes § 52-59b (a)(3), this court can exercise jurisdiction over a nonresident individual who (1) in person or through an agent (2) commits a tortious act outside the state (3) causing injury to a person or property within the state, (4) if the individual regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (5) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. CT Page 8519
As noted, the defendants argue that the allegations of tortious activity against them involve conduct performed on behalf of the corporation, rather than in their personal capacity, and as such there is no basis for the Connecticut courts to assert personal jurisdiction over them. "Where, however, an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby." Scribner v. O'Brien, 169 Conn. 389, 404, 363 A.2d 160
(1975). "It is black letter law that an officer of a corporation who commits a tort is personally liable to the victim regardless of whether the corporation is liable." Kilduff v.Adams, Inc., 219 Conn. 314, 331-32, 593 A.2d 478 (1991); see also Sabo v. Automated Light Technologies, Inc., Superior Court, judicial district of Waterbury, Docket No. 110800 (Jun. 3, 1994, Sylvester, J.). Accordingly, the fact that the defendants were acting on behalf of the corporation when they committed the alleged torts would not shield them from liability on an individual basis. Accordingly, a cause of action arising from a tort committed by an individual acting on the behalf of a corporation can satisfy the requirements for General Statutes §52-59b (a)(3). See Braunstein v. Hayes Thynne, P.C.,8 CSCR 280 (February 16, 1993, Nigro, J.); cf. N.E. Contract Packers v.Beverage Services, 7 CSCR 828 (June 18, 1992, Gaffney, J.); see also General Electric Co. v. Welch, 638 F. Sup. 215, 223
(D.Conn. 1986).
The plaintiffs must still sustain their burden of establishing facts to support the court's exercise of jurisdiction under General Statutes § 52-59b(a)(3). The issue therefore, is whether the evidence supports a finding of tortious activity outside the state causing injury within the state for the purpose of establishing personal jurisdiction under General Statutes § 52-59b (a)(3).
 [I]n enacting § 52-59b, the legislature used New York Civil Practice Law § 302 (McKinney 1980-81 Sup. ) as a model. . . . We therefore find pertinent the judicial interpretation given to that New York statute. . . .
(Additional citations omitted.) Zartolas v. Nisenfeld,184 Conn. 471, 474-75, 440 A.2d 179 (1981). Under New York Civil Practice Law, § 302, when a defendant makes a tortious misrepresentation outside the state, intending that it be relied upon within the state, the tort has been committed outside the state CT Page 8520 for jurisdictional purposes. Marine Midland Bank v. Keplinger Associates, 488 F. Sup. 699, 703 (S.D.N.Y. 1980); see alsoCenter Capital Corp. v. Hall, III, 9 Conn. L. Rptr. 265 (June 9, 1993, Dorsey, S.T.R.). Under New York law, when a defendant knowingly sends a false statement into a state intending that it be relied upon to the recipient's injury, then personal jurisdiction in the state where the misrepresentation was received and acted upon will lie if all other requirements of the long-arm statute are satisfied. Center Capital Corp. v.Hall, III, supra, 9 Conn. L. Rptr. 265, citing Hargrave v. OkiNursery, Inc., 636 F.2d 897 (2d Cir. 1980); Marine Midland Bankv. Keplinger Associates, supra, 488 F. Sup. 699; Bankers TrustCo. v. Mora, 523 F. Sup. 285 (S.D.N.Y. 1981).
The plaintiff Mrs. Basta testified at the hearing on the motion to dismiss to the following scenario with respect to the adoption services performed by the defendants. The defendants would assign a prospective adoptive child to the plaintiffs, the adoption would be scheduled, and then a long series of delays and problems would ensue, until the plaintiffs would be informed that the child was not adoptable. This occurred during the entire thirty-six month term of the contract. When the plaintiffs requested a return of the monies they had paid, as per the contract terms, the defendants refused. The plaintiffs took out an interest bearing home equity loan in order to finance the adoption, which was never forthcoming. In addition, the plaintiff testified that the defendants admitted that they assigned children to the plaintiffs for adoption, only to later discover that the children were unadoptable.
The plaintiff submitted evidence during the hearing on the motion indicating that the individual defendants made certain representations to the plaintiff, via telephone, on which the plaintiffs base their allegations of negligent conduct and fraud. The plaintiff Mrs. Basta testified that the defendants admitted to her that they knew for several weeks that one of the prospective adoptive children could not be adopted, but failed to readily inform the plaintiffs of this information. In the interim, the plaintiffs were prepared to leave on a moment's notice, having allocated all their vacation time in order travel to Chile to adopt the child. As the plaintiff testified, the defendants later conceded that they delayed informing her that the adoption was off until they found another child for her to adopt, so as to not discourage her and her husband from abandoning their attempts to adopt a child. The plaintiff CT Page 8521 testified that she was induced to attempt the other adoption, which also failed, and that she was in an emotionally susceptible state, due to the other failed adoptions. The plaintiff testified that the defendants were aware of her emotional state at the time of the misrepresentations. Mrs. Basta also testified to severe emotional distress, and related physical injury and monetary damage due to the several failed and protracted attempts at an adoption. All the correspondences and information regarding the adoption services were received by the plaintiffs in their Connecticut home via mail or telephone.
In the present case, there is no dispute that the misrepresentations were made in Pennsylvania. In addition, the performance of the contract occurred in Pennsylvania, where the defendants' agency was located. The contract, however, contemplated that a child would be placed into the plaintiffs' home in Connecticut. The plaintiff Mrs. Basta testified that she relied on the defendants' representations in order to enter into the contract, and to continue with the defendants' services. The defendants also took out a home equity loan in Connecticut to finance the adoption. Accordingly, this court finds that the plaintiffs have sustained their burden of proving the defendants' tortious conduct committed outside of the state sufficient for establishing personal jurisdiction under General Statutes § 52-59 (a)(3).
Under General Statutes § 52-59b(a)(3), the injury within the state must be immediate and direct. Faherty v. Fender,572 F. Sup. 142, 149 (S.D.N.Y., 1983); see also Center Capital Corp.v. Hall, III, supra, 9 Conn. L. Rptr. 265. Where emotional distress damages constitute the injury within the state for the purpose of New York Civil Practice Law, § 302, the injury must not be remote, consequential or of a derivative nature stemming merely from the plaintiff's residence in the forum, but must be based upon a more direct and foreseeable expectation of injurious consequences within the state. Faherty v. Fender,572 F. Sup. 142, 149 (S.D.N.Y., 1983).
As noted, the plaintiff testified that she suffered emotional distress. Based on the personal and emotionally significant subject matter of the contract in this case, it is foreseeable and expected that direct and injurious consequences would result from the negligent performance the contract. The plaintiff Mrs. Basta testified that adoption provided her with the only opportunity to experience parenthood. The contract CT Page 8522 contemplated that the plaintiffs would be able to adopt a child into their home, and thus fulfill the otherwise unattainable desire to experience parenthood. In such circumstances, the injurious consequences of the defendants' failure to use reasonable care in the performance of this contract are foreseeable and expected. Accordingly, if proven at trial, it can be found that the plaintiffs suffered injury within the state, for the purposes of General Statutes § 52-59b(a)(3).
In support of this conclusion, it is noted that General Statutes § 17a-152 requires that
 [a]ny person or public or private agency, corporation or organization, before bringing or sending any child into the state for the purpose of placing or caring for him in any home or institution, either free or for board, shall make application to the commissioner of children and families, giving the name, the age and a personal description of such child, the name and address of the person, home or institution with whom the child is to be placed, and such other information as maybe required by said commissioner. Such person or institution shall be licensed by said commissioner under the provisions of sections 17a-145 and 17a-151.
(Emphasis added.) The fact that the state requires a person to be licensed in order to perform adoption services for Connecticut families supports the conclusion that such activities have an immediate and significant impact within Connecticut on the residents and families of this state.
With respect to the second part of General Statutes § 52-59b
(a)(3), the plaintiff must show that the defendants (A) regularly do or solicit business, or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derive substantial revenue from interstate or international commerce.
With respect to subsection (3)(A), there was no specific evidence of the extent of the defendants' or TAA's other adoption services performed in this state. With respect to subsection (3)(B), however, it is already concluded that the nature of the contract supports a finding that the defendants CT Page 8523 should reasonably have expected that their actions would have consequences in this state. Subsection (3)(B), however, also requires that the defendants derive "substantial revenue" from interstate commerce.
 New York courts have interpreted "substantial revenue" so as not to require "any connection between the tortious act committed outside the state and the deriving of revenue from goods used in [Connecticut] or [in the case of (52-59b(a)(3)(B)] from interstate . . . commerce. . . ." Gilmore v. J.S. Inskip, Inc., 282 N.Y.S.2d 127, 132 (1967). Additionally, the defendant need not make gross sales in either the forum state or in interstate commerce. Gilmore,
supra. Thus, if the defendant "received `substantial revenue' from goods used in . . . interstate commerce . . . the statute subjects it to personal jurisdiction." Id. The American Heritage Dictionary p. 1213 (2d College Ed. 1982) defines "substantial" as "[o]f, pertaining to, or having substance: material; considerable in . . . value . . . [or] amount. . . ." Id. The "substantial revenue" provisions of CPLR § 302 (a)(3) are . . . predicated on the concept that one who derives substantial revenue from goods used or consumed or services rendered in the state has sufficient contact with the state to sustain jurisdiction of an action to recover for an injury to person or property occurring within the state as a result of a tortious act committed by the defendant outside this state. Similarly . . . one who derives substantial revenue from interstate . . . commerce, even though it does not include substantial revenue to him from goods used or services rendered in [the forum], nonetheless has sufficient contact with [the forum] to sustain jurisdiction of such an action if he expects or should reasonably expect that his tortious act outside [the forum] will have consequences [within the forum]. Gilmore, supra, at 134-35.
(Internal block quotes omitted.) Shopey v. Lupon,5 Conn. L. Rptr. 473, 474 (Jan. 22, 1992, Pickett, J.).
The defendants' affidavits indicate that the defendants, through TAA, performed adoption services for many families throughout the United States. In discussing these assertions, CT Page 8524 defendants' counsel indicated that the defendants and TAA have facilitated a significant amount of adoptions throughout the United States. As noted in their affidavits, the purpose of TAA, which the defendants owned and operated, was to place children in adoption throughout the United States. (¶ 5, Exhibits A B.) In the present case, the amount expended by the plaintiffs for the defendants adoption services was $13,650.00. Using even a fraction of this amount as the typical amount charged for the defendants' adoption services, considering the significant amount of adoptions the defendants performed throughout the United States, the defendants derived substantial revenue from the sale of their adoption services in interstate commerce. Accordingly, the requirements of General Statutes §52-59b(a)(3)(B) have been satisfied.
Nevertheless, before this court can exercise personal jurisdiction over the individual defendants, it must be determined whether the exercise of in personam jurisdiction would satisfy the minimum contacts requirements of the due process clause. Frazer v. McGowan, 198 Conn. 243, 246,502 A.2d 905 (1986); Gaudio v. Gaudio, supra, 23 Conn. App. 298.
 "The United States constitution allows state courts to assert jurisdiction over nonresident defendants only when minimum contacts exist between the defendant and the forum state. The nature of these contacts must be such that requiring the defendant to defend in the forum state does not offend `traditional notions of fair play and substantial justice.' World-Wide Volkswagen Corporation v. Woodson, [444 U.S. 286 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)]; International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945)]; Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed.2d 278 (1940)." Frazer v. McGowan, supra, [198 Conn.] 252.
Gaudio v. Gaudio, supra, 23 Conn. App. 299.
 The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself CT Page 8525 of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72, 105A S.Ct. 2174, 85 L.Ed.2d 528 (1984), quoting Hanson v. Denckla,357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). "The defendant's conduct and connection with the forum state must be such that she should reasonably anticipate being haled into court here." Austin v. Austin, 9 Conn. L. Rptr. 211, 212 (June 4, 1993, Dranginis, J.) citing Burger King Corp. v. Rudzewicz,
supra, 471 U.S. 474.
The evidence indicates that the individual defendants' corporation purposely availed itself of the privilege of conducting activities within Connecticut by performing seminars in Connecticut for the purpose of soliciting its adoption services to Connecticut residents. The purpose of these services was, obviously, to place children in Connecticut households for Connecticut families. The defendants caused a contract to be mailed to this state, and agreed to perform services designed to place a child in a Connecticut household to be adopted by a Connecticut family. In addition, in the performance of this contract, which contemplated the adoption of a child by residents of Connecticut, the defendants committed various acts causing injury within the state. Accordingly, requiring the defendants to defend the allegations against them in Connecticut does not offend "traditional notions of fair play and substantial justice," and the defendants should reasonably anticipate being haled into court here. World-Wide VolkswagenCorporation v. Woodson, 444 U.S. 286 292, 100 S.Ct. 559,62 L.Ed.2d 490 (1980); International Shoe Co. v. Washington,326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945); Milliken v.Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed.2d 278 (1940).
Therefore, this court finds that its exercise of in personam jurisdiction over the individual defendants in this case does not violate the minimum contacts requirements of the due process clause. Therefore, for the reasons set forth hereinbefore, the defendants' motion to dismiss is denied.
WILLIAM J. SULLIVAN, J.