[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: HEWITT'S MOTION TO DISMISS #112
On June 24, 1999, the plaintiff, The Whalley Glass Company (Whalley), filed a one count+ complaint in this foreclosure action[1] against the defendants, The Nielson Company (Nielson), Royal Conservatories, LLC (Royal), and People's Bank. On April 3, 2000, this court granted Whalley's motion to amend its complaint and to cite in James Hewitt (Hewitt) as an additional defendant. Whalley's amended complaint contains a second count sounding in breach of contract against Hewitt and alleges CT Page 6375 the following facts: Nielson owns and is in possession of a certain lot of land (the property) located in Darien, Connecticut. Nielson entered into a contract with Royal, a Minnesota company, and the terms of the contract required Royal to erect a building on the property for Nielson. Royal entered upon the performance of the contract and in the course thereof, bought materials and supplies from Whalley in the amount of $21,784.90 for use in the construction of the building. Whalley furnished materials for the construction of the building during the period spanning from December 8, 1998, through January 17, 1999. In order to induce Whalley to enter into a contract with Royal, Hewitt individually and personally guaranteed payment. Whalley further alleges that the sum due Whalley for materials and supplies has not been paid and that Hewitt breached the agreement in that he failed and refused to pay Whalley pursuant to his guarantee. Finally, Whalley alleges that as a result of Hewitt's breach, Whalley has sustained damages and that this court has jurisdiction over Hewitt as an individual defendant pursuant to General Statutes § 52-59b (a)(1).[2]
On June 12, 2000, Hewitt entered an appearance and on July 12, 2000, Hewitt filed a motion to dismiss Whalley's complaint on the ground that the court lacks personal jurisdiction over him. Hewitt contends that he is not a resident of the state of Connecticut and that he has not, in his individual capacity, transacted business in Connecticut in a manner sufficient to render him subject to the exercise of personal jurisdiction by this court. Hewitt filed a memorandum of law and an affidavit in support of his motion and Whalley filed a memorandum of law, an affidavit and other documentary exhibits in opposition thereto. Hewitt's motion was heard by this court on February 26, 2001, and this decision followed.
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v.Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). A motion to dismiss may be used to assert lack of jurisdiction over the person. Practice Book § 10-31(a)(2). "It is well established that in ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Brackets omitted; internal quotation marks omitted.)Lawrence Brunoli, Inc. v. Branford, 247 Conn. 407, 410-11, 722 A.2d 271
(1999). Furthermore, "[t]he motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." Ferreira v. Pringle, 255 Conn. 330, 346, 766 A.2d 400
(2001). "Where, however . . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their CT Page 6376 content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint."[3] Id., 346-7.
"When a defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required. The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) Knipple v. Viking Communications, Ltd., 236 Conn. 602, 606,674 A.2d 426 (1996). "If a challenge to the courts personal jurisdiction is raised by a defendant, either by a foreign corporation or by a nonresident individual, the plaintiff must bear the burden of proving the court's jurisdiction."[4] Id., 607. However, "[w]hen issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses."Standard Tallow Corporation v. Jowdy, 190 Conn. 48, 56, 459 A.2d 503
(1983).
Whalley argues that this court's exercise of jurisdiction over Hewitt as an individual defendant is authorized by General Statutes § 52-59b
(a)(1) and that such an exercise of jurisdiction does not violate constitutional principles of due process. Whalley asserts that in its decision to provide supplies and materials to Royal, it relied upon Hewitt's personal guarantee of payment and that the making of such a personal guarantee constitutes transacting business, within the meaning of General Statutes § 59b (a)(1). Whalley relies on Zemina v. PetrolPlus, Inc., Superior Court, judicial district of New Haven, Docket No. 128590 (March 3, 1998, Levin, J.) (22 Conn.L.Rptr. 94). In Zemina, the court held that the assertion of personal jurisdiction over a nonresident individual under § 52-59b (a)(1) was proper in action on an agreement guaranteeing the performance of a lease to real property located in Connecticut, even though the agreement was not executed in Connecticut. Consequently, Whalley contends that this court can exercise jurisdiction over Hewitt, a nonresident, based upon his guarantee of a construction contract to be performed in Connecticut.
Hewitt argues that an assertion of personal jurisdiction over him is not authorized by General Statutes § 52-59b (a)(1) because he has never transacted business in Connecticut in his personal capacity. Furthermore, Hewitt argues that even this court finds that he did, his conduct fails to satisfy the federal due process requirements of minimum contacts. Hewitt maintains that his mere act of signing a single page CT Page 6377 credit application while in Minnesota was neither a personal business transaction nor a personal guarantee of payment executed with an intent to induce Whalley to enter into a contract with Royal. Rather, Hewitt asserts that his execution of the credit application was done solely in his representative capacity as an officer or agent of his employer, Royal.
First, this court must address whether Hewitt transacted any business in Connecticut, within the ambit of Connecticut's long-arm statute, General Statutes § 52-59b (a)(1).[5] The Connecticut Supreme Court has observed and stated that "[t]he General Statutes do not define what the phrase transacts any business' means in the context of § 52-59b. We note, however, that in enacting § 52-59b, the legislature used New York Civil Practice Law § 302 (McKinney 1980-81 Sup.) as a model. . . . We therefore find pertinent the judicial interpretations given to that New York statute. . . . In accord with that interpretation, we construe the term "transacts any business' to embrace a single purposeful business transaction." (Citations omitted.) Zartolasv. Nisenfeld, 184 Conn. 471, 474, 440 A.2d 179
(1981); accord New Horizon Financial Service, LLC. v. MortageSearch Acquisition, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 179423 (February 27, 2001, Hickey, J.). "A purposeful business transaction is one in which the defendant has engaged in some form of affirmative conduct allowing or promoting the transaction of business with the forum state." New HorizonFinancial Service, LLC. v. Mortgage Search Acquisition, supra, Superior Court, Docket No. 179423; Integrated Corporate Relations, Inc. v.Stollmeyer, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 363254 (November 16, 1999, Melville, J.).
Drawing on New York jurisprudence, the Connecticut Supreme Court stated, in Zartolas, that "[i]n determining whether the plaintiffs' cause of action arose from the defendants' transaction of business within this state we do not resort to a rigid formula. Rather, we balance considerations of public policy, common sense, and the chronology and geography of the relevant factors." Zartolas v. Nisenfeld, supra,184 Conn. 477; see also Gaudio v. Gaudio, 23 Conn. App. 287, 298,580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990). Furthermore, the Zartolas court observed that the term "transacts any business" within § 52-59b has a broader meaning than the term "transacts business." Zartolas v. Nisenfeld, supra, 184 Conn. 476 n. 4. Finally, the Zartolas court held that the term "transacts any business" extended to the execution outside of Connecticut of a warranty deed to real estate in Connecticut. Id., 474, 478; see also Zemina v. Petrol Plus,Inc., supra, 22 Conn.L.Rptr. 94 (holding that term "transacts any business" extended to execution outside of Connecticut of agreement CT Page 6378 guaranteeing performance of lease to real property located in Connecticut).
In Connecticut, the general rule is that there is no personal jurisdiction over nonresident officers of a corporation where their contact with the state was only in their capacity as a corporate officer. Advanced Claims Service v. Franco Enterprises, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 374548 (October 13, 2000, Melville, J.); Leach Holdings v. Raymark Industries, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 345036 (December 23, 1997, Melville, J.) (21 Conn.L.Rptr. 468, 469); CharlesTown Associated Limited Partnership v. Dolente, Superior Court, judicial district of Litchfield, Docket No. 069233 (May 1, 1996, Pickett, J.). This is true even where the corporation has its principal place of business within the state. Leach Holdings v. Raymark Industries, supra,21 Conn.L.Rptr. 469. See also Hagar v. Zaidman,797 F. Sup. 132, 137 (D.Conn. 1990) (General Statutes § 52-59b (a)(1) did not confer jurisdiction over individual president of corporation where president transacted business in Connecticut only on behalf of the corporation). This general rule was employed in Basta v. Today's Adoption, Superior Court, judicial district of Waterbury. Docket No. 119321 (July 25, 1995, Sullivan, J.), where the court held that "[i]n order to confer jurisdiction over the individual defendants under subsection (a)(1) [of General Statutes § 52-59b], the plaintiffs must show that the individual defendants, in person or through an agent, transacted any business within the state. . . . The plaintiff failed to offer any evidence indicating that the individual defendants conducted any business in Connecticut on their own behalf. The evidence submitted in support of and in opposition to the present motion indicates that all the activities performed by the individual defendants were performed on behalf of the corporate defendant. . . . The plaintiffs offered no evidence indicating that the individual defendants personally transacted any business in Connecticut, or had individuals transact business in Connecticut on their behalf." (Citations omitted; internal quotation marks omitted.) Id.
Furthermore, the Superior Court has been consistent in its approach to corporate defendants. For example, the court in Tek-Motive, Inc. v. AFB,Inc., Superior Court. judicial district of New Haven at New Haven, Docket No. 349298 (November 12, 1993, Zoarski, J.), held that when examining the corporate officer's activities, the court must look to his personal contacts with the state of Connecticut and not to the contacts made on behalf of any corporate entity of which he was an officer or controlling shareholder. In N.E. Contract Packers v. Beverage Services, Superior Court, judicial district of Waterbury, Docket No. 100039 (June 18, 1992.Gaffney, J.) (6 Conn.L.Rptr. 582; 7 CSCR 828, 829), the defendant's visits to Connecticut were in his capacity as a corporate officer and for CT Page 6379 the purpose of negotiating an agreement between his company and the plaintiff. The court held that in personam jurisdiction over a corporate director does not stem from jurisdiction over the corporation but rather from the director's own personal contacts with the forum state. Id; see also Corporation for Independent Living v. Charter Oak Associates, Superior Court, judicial district of Tolland at Rockville, Docket No. 048503 (April 10, 1992, Sferrazza, J.) (construing § 52-59b (a)(1) to require proof that non-resident transacted business in Connecticut in an individual capacity and not merely on behalf of corporate employer).
This court's review of the exhibits and affidavits submitted by the parties reveals the following additional pertinent information:[6]On November 18, 1998, Hewitt executed a "consumer credit application" which states, inter alia, that Hewitt is a director and forty-eight percent owner of Royal. (Amended Complaint, addendum; Whalley's memorandum dated July 12, 2000, Exh. C.) The consumer credit application further states: "[I]t is agreed that the undersigned, in consideration of [Whalley] selling merchandise to the company applying herein for credit do each hereby personally and individually guarantee payment of [Whalley]. . . . Also, should [Whalley] deem it necessary to place the account with an attorney or collection agency, the undersigned will be responsible for the payment of all attorney fees and the balance due." (Emphasis added.) (Amended Complaint, addendum; Whalley's memorandum dated July 12, 2000, Exh. C.) Hewitt's signature is the only signature appearing in the space just below this quoted language, next to the words "[o]wner's [s]ignature." (Amended Complaint, addendum; Whalley's memorandum dated July 12, 2000, Exh. C.) Hewitt attests that he is a resident of the state of Minnesota and an officer of Royal, which is located in Eagan, Minnesota. (Hewitt Aff., ¶¶ 2, 3.) Hewitt further attests, however, that the credit application was furnished by Whalley and signed by him in his office in Minnesota, in his capacity as an agent of Royal. (Hewitt Aff., ¶ 6.) Finally, Hewitt attests that he has not transacted business at any time, in his individual capacity, in the state of Connecticut. (Hewitt Aff., ¶ 8.)
The court is unable to determine from this evidence whether Hewitt transacted business in his personal capacity in a manner that brings him within the reach of § 52-59b (a)(1). Specifically, this court has insufficient factual information regarding the circumstances leading up to and surrounding Hewitt's execution of the guarantee. This includes Hewitt's contacts with Connecticut in connection with his execution of the guarantee, such as the existence, nature and extent of any correspondence or other purposeful activities. Consequently, although the language contained in the consumer credit application clearly recites that Hewitt personally and individually guaranteed payment to Whalley, this court has an insufficient factual basis to determine whether CT Page 6380 Hewitt's execution of the guarantee rises to the level of transacting business under § 52-59b (a)(1). See Shemin Nurseries v. The LoscoGroup, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 121130 (July 16, 1992, Rush, J.) (7 CSCR 948) (individual defendant did not transact business in Connecticut within meaning of § 52-59b (a)(1) where individual defendant's only relationship with state consisted of guaranty signed outside of Connecticut to pay sums due to Connecticut resident); N.E. ContractPackers v. Beverage Services, supra, 6 Conn.L.Rptr. 582; 7 CSCR 828
(execution of personal guaranty did not constitute purposeful business transaction within state sufficient to support application of Connecticut's long-arm statute, § 52-59b (a)(1)); see also Zeminav. Petrol Plus, Inc., supra, 22 Conn.L.Rptr. 94 (in holding personal jurisdiction over nonresident individual proper under § 52-59b (a) (1), court found confluence of circumstances "significant" in addition to existence of guaranty executed by nonresident individual).
When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses. Standard Tallow Corp. v. Jowdy, supra, 190 Conn. 56; see also Advanced Claims Service v. Franco Enterprises, supra, Superior Court, Docket No. 374548 (evidentiary hearing is appropriate method to resolve jurisdictional question under § 52-59b (a)(1) as to whether individual defendant transacted business in individual or official capacity). Accordingly, the court shall reserve its ruling on Hewitt's motion to dismiss until a hearing is held to determine the issue of jurisdiction. Therefore, until the court determines that it has personal jurisdiction over the defendant pursuant to the long arm statute, it will defer its consideration of whether its assertion of jurisdiction would violate principles of due process. See Olson v. Accessory Controls Equipment Corp., 54 Conn. App. 506, 514, 735 A.2d 881 (1999), aff'd on other grounds, 254 Conn. 145, 757 A.2d 14 (2000). The parties are advised to contact the clerk's office to make arrangements for a hearing date which is as soon as possible.
 _____________________ HICKEY, JUDGE