[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married in Hungary on December 17, 1988. They have two minor children, Sophia, born October 9, 1989, and Aniko, born December 15, 1992. All of them reside at the family home at 344 Valley Road in the Cos Cob Section of Greenwich. The husband lives in a separate apartment on the premises. At the time of trial, the parties filed a Stipulation regarding custody and a parenting plan dated June 26, 2002 which has been filed with the court. The court heard testimony and argument over the course of three days.
The husband is 58 years old, a high school graduate and a self-employed contractor. He emigrated from Hungary (via Austria) and worked as a carpenter. He purchased the property at 344 Valley Road for $69,000 cash in 1981, seven years prior to the marriage. The husband has been diagnosed with terminal prostrate cancer and has been given anywhere from one to ten years to live. He runs his own contracting business from which he earns approximately $52,000 a year. He testified that his illness has sapped his energy, and he does use one employee whom he pays approximately $1000 a week.
The wife is 34 years old, also a high school graduate, and an emigrant from Hungary. She is in apparent good health. At present she is currently unemployed, however, at one point she was a licensed day care provider, and her earlier affidavit as on file with the court indicated that she is capable of grossing $664.00 a week. However, her testimony at trial indicated that this was somewhat high, and that her actual earnings were in the neighborhood of $500 to $600 a week, and that she never earned more that about $25,000 per year. She provided day care services out of the family home, however, there was a fire in October 2001 which did substantial damage making the place temporarily uninhabitable. The place has since been restored and the parties have resumed their residence, but she has not chosen to go back to work. Aside from the house, the parties have very few assets. The husband's financial affidavit indicates that he has approximately $50,000 in debts, including $30,000 in back federal CT Page 13041 income taxes, as well as $8,500 in unpaid medical bills. His testimony indicated that he has no life insurance, and he testified that he expects the uncovered medical bills to increase with time. The wife's financial affidavit shows somewhat in excess of $20,000 in debts.
The principal focus of the controversy between the parties is with the property at 344 Valley Road. It is the sole significant asset. The dwelling consists of three separate residences, two of which were owned by the husband prior to marriage. Extensive renovations were made since the purchase, however, the property is non-conforming to zoning, and the ownership of a portion of the dwelling by a third party is a drawback. Nevertheless, an appraisal of the property in September 2001 (admitted by agreement as Exhibit 4), found the fair market value to be $615,000. There is no mortgage on the property. Throughout the marriage, in spite of the wife's testimony that she asked for an interest in the house, title to the property remained in the husband's name until July 5, 2000 (five months prior to the commencement of the present action), when he transferred the property to an irrevocable trust for the benefit of the two children of the marriage. He filed gift tax returns at the time of with the transfer, and he paid a substantial gift tax with the proceeds from the sale of Florida property he had purchased with a friend. The wife claims that the transfer was fraudulent and done simply to avoid any potential equitable division of the property with her. She testified that the parties had experienced marital problems as early as 1996, and that she had discussed the possibility of a divorce with him at that particular time. The wife first sought a divorce in 1997, but she never filed her complaint on the strength of the husband's promise to attend counseling. The husband countered with, among other things, his concern that the wife's day care business was a potential source of liability, and because of his fear that he will be totally incapacitated, with the result that his potential medical bills would place this asset in jeopardy. While both of these are rational explanations, they beg the question as to why he left his wife "out of the loop."
Subsequent to the filing of the case, the wife cited in the trustee, Sandra F. Hillman. Later, the successor trustee, one George J. Rosza, C.P.A., was impleaded in her stead and is now a party to the action. The husband claims that he consulted with Mrs. Hillman as a friend and with Mr. Rosza as a financial advisor before making the transfer. Both of these parties testified as witnesses, and their testimony with regard to the parts they played in the transfer was found to be credible. The court remains skeptical with regard to their testimony concerning the husband's stated motives. In fact, the court believes that it is likely that he shared with them his view of his wife's shortcomings, and, in any event, the court finds it difficult to believe that one or both of them failed CT Page 13042 to question him as to why no provision was made for her. However, of more significance, was Mrs. Hillman's testimony regarding the fact that the husband continued to maintain control after the transfer in trust. His dealing with the insurance company and officials of the Town of Greenwich regarding the rebuilding of the home following the fire is a case in point. In order to buttress the husband's argument with regard to his concern for the welfare of the children, Mrs. Hillman further testified that in addition to asking her to serve as trustee, he gave to her certain items of personal property to be held by her and to be given to the children after his death.
As to the cause of the breakdown of the marriage, the wife testified that the husband did not trust her, that he was jealous, and that they had many fights over money. For his part, the husband testified that the wife had access to his business account and wrote checks for her personal use against that. In addition, shortly before the dissolution the husband testified that the wife withdrew $20,000 from the parties' marital assets, paid $5000 to her attorney, placed $15,000 in a CD and then later to her checking account. Both parties claim that each has sent money to family members in Hungary.
 LAW
It is axiomatic that in dividing the marital estate, the court applies the principles of equitable distribution. Thus, irrespective of actual ownership of property, it is within the power of the court to "assign to either the husband or wife all or any part of the estate of the other."General Statutes § 46b-81 (a). Referring to marriage as a "unique human relationship" our courts have taken a dim view where one party attempts to deceive or perpetrate a fraud upon the other in the context of an action for dissolution. Billington v. Billington, 220 Conn. 212,221 (1991). Accordingly, where there is an allegation of fraudulent conveyance in a matrimonial action, the courts apply a distinct, two-pronged legal standard, to wit: (1) Was the transfer made "without substantial consideration," and (2) Did the transfer remove "property from the marital estate that would otherwise have been subject to claims of equitable distribution." Tessitore v. Tessitore, 31 Conn. App. 40, 42
(1993). The party alleging such conduct has the burden of demonstrating the same by "clear and convincing evidence." Gaudio v. Gaudio,23 Conn. App. 287, 307-308 (1990); cert. denied, 217 Conn. 803 (1990). The defendant cites Watson v. Watson, 221 Conn. 698 (1992) in support of his position. His reliance is misplaced. There, the trial court found fraudulent intent, but declined to return the property to the marital estate. After an appeal and the subsequent retrial of the financial issues, the Supreme Court granted certiorari from a second appeal. In its CT Page 13043 opinion, the high court found that in pleading over, while the wife had abandoned her claim for a return of the property, she had pleaded in the alternative that the value of the property in question, as well as her contributions to its maintenance, preservation, and appreciation, should have taken into account by the court for purposes of equitable distribution. Watson, supra at 709. The Supreme Court agreed, and it reversed the trial court. The court in this matter is faced with a variant of the scenario in Watson, to the effect that, should the transfer not be reversed, even if it takes the value of the property into consideration for purposes of equitable distribution, there are no other assets of significant value to be applied as an offset in order to recognize the wife's contributions to the marriage.
The court finds the husband's motives to be "mixed" at best. The husband would ask the court to adopt the principle that until the action was filed, the wife had no legal rights in or to the transferred property, and therefore, there could be no fraud. This the court declines to do, since it flies in the face of our well-established legal tradition of equitable distribution. The "equitable clock" starts ticking with the words "I do." When all is said and done, a court should be guided by equity, which is the "keystone" to the court's ability to fashion relief in the "infinite variety of circumstances" which arise in the context of a matrimonial action. Sunbury v. Sunbury, 13 Conn. App. 651 (1988).
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in General Statutes §§ 46b-56, 46b-81, 46b-82, 46b-84, and 46b-215a, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That it has jurisdiction.
2. That the allegations of the complaint as amended are proven and true.
3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown.
4. That, after taking into account the earning capacity of the wife, the presumptive basic child support is $304.00 per week; and that after taking into account the husband's payment of health insurance premiums[1]
for the minor children in the amount of $73.00 per week, his share is $152.00 per week ($659.00 per month). CT Page 13044
5. That the property was purchased by the husband in September 1981, prior to the marriage, for the sum of $69,000; that since the date of the marriage substantial renovations were made to the dwelling; that both parties contributed to the maintenance and preservation of this asset; that until the transfer of title by the husband in July 2000, title has always been in the name of the husband; that the property is a marital asset subject to equitable division; that at or about the time of the return date, the wife removed approximately $20,000 of marital funds to be used for her purposes, and that it is equitable and appropriate that the court take this into account; and that after considering all the evidence, including the above factors, the court finds that it would be equitable and appropriate that the wife be awarded a share of the real property in the amount of $150,000.
6. That the conveyance of the husband of his interest in and to the real property known as 344 Valley Road, Greenwich, Connecticut, to the "Laszlo Kovacs Irrevocable Inter Vivos Trust" by Quit Claim Deed dated July 5, 2000, and recorded in the Land Records of the Town of Greenwich in Book 344 at page 293 was fraudulent, having been made without substantial consideration, and was a clear attempt to deprive the wife of any equitable claim to an interest therein; that the wife has met her burden of proof by clear and convincing evidence; and that the court, having considered the testimony and evidence, based its findings interalia on the following:
a. The court found the wife's testimony to the effect that at the time of the transfer of title to the trust, the parties had been experiencing marital difficulties for a considerable period of time prior thereto, including frequent fights about finances, to be credible.
b. That the court considered the husband's testimony as to the stated purpose of the transfer of title, which was to make provision for his children at the time of his death from terminal prostate cancer, in light of his further testimony that he was concerned regarding his wife's spending habits.
c. That the wife is substantially younger than the husband (24 years), and the court found her testimony regarding her husband's jealousy to be credible.
d. That the court considered the fact that a wife of nearly fourteen years would, in addition to his children, under normal circumstances, be a natural object of his bounty. CT Page 13045
e. That the transfer of title took place shortly before the filing of the Complaint by the wife; that the recited consideration was nominal; that said transfer was in anticipation thereof and made with the intent to remove the real property from the marital estate and to deprive the wife of a claim for equitable distribution of same.
f. That the uncontroverted testimony and evidence demonstrate that throughout the marriage, the wife made financial contributions to the family from her earnings, contributions to the improvement and appreciation in value of the real estate, and as homemaker, which she is entitled to have considered by the court in an action for dissolution of marriage; that the husband was aware of same; and, of more significance, he knew or should have known these claims would likely be thwarted as a direct result of the transfer.
g. That, assuming arguendo, the primary purpose of the transfer was for the benefit of the minor children, the husband's actions were intentional, as demonstrated by the fact that he sought independent professional assistance with regard to the transfer; that another direct consequence of these actions was to deprive the wife of any interest in the property, equitable or otherwise; and that a reasonable man is presumed to intend the likely consequences of his actions.
h. That the husband retained and exercised some measure of control over the property following the transfer to the trust.
7. That the parties entered into a Stipulation Re Custody and Parenting Plan dated June 26, 2002 as on file with the court; and that said Stipulation is in the best interest of the minor children.
8. That credible evidence was introduced which demonstrates that the wife has an earning capacity of at least $25,000.00 per annum; that she has the ability to support herself; that, at present, she has the primary child care responsibilities; that, under all the circumstances, including her earning capacity, her age, and her apparent good health, it is equitable and appropriate to award her time-limited alimony. Ippolito v.Ippolito, 28 Conn. App. 745, cert. denied, 224 Conn. 905 (1992); and that it is also equitable and appropriate for the court to consider her earning capacity in determining the appropriate amount of child support.Hart v. Hart, 19 Conn. App. 91, 91-95 (1989).
9. That the uncontroverted evidence before the court demonstrated that the husband suffers from terminal prostate cancer; that said illness has some present effect upon his ability to engage in his customary and usual occupation; that at present, he has the ability to support himself; that CT Page 13046 the court can take judicial notice of the fact that the progressive nature of the disease is such that, in the future, it is likely to impact his ability to work to a greater degree than at present; and that it is equitable and appropriate under all the circumstances that the court make some provision for the payment of periodic alimony to him.
 ORDER
IT IS HEREBY ORDERED THAT:
1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmarried.
2. The parties shall have joint legal custody of the minor children, whose principal residence shall be with the mother, and the father shall have parenting time in accordance with a certain Stipulation Re Custody and Parenting Plan dated June 26, 2002, as on file, which is hereby incorporated by reference herein as Schedule A.
3. The husband shall pay to the wife the sum of one ($1.00) Dollar per year as and for periodic alimony, until the death of either party, the remarriage of the wife, or June 30, 2011, whichever shall sooner occur. Pursuant to General Statutes § 46b-86 (a) the term of alimony is nonmodifiable.
4. The wife shall pay to the husband the sum of one ($1.00) Dollar per year as and for periodic alimony, until the death of either party, or the remarriage of the husband, whichever shall sooner occur.
5. Commencing November 1, 2002, and monthly thereafter, the husband shall pay to the wife the sum of $659.00 as and for child support, until such time as the oldest child shall reach the age of eighteen years or shall be otherwise emancipated, at which time child support for the remaining child shall be adjusted in accordance with the then existing Child Support Guidelines or as a Court may otherwise direct. The foregoing notwithstanding, if any child shall turn eighteen years old and is still in high school, then, in that event, the child support shall continue until the first day of next month following graduation from high school or their nineteenth birthday, whichever shall sooner occur, pursuant to General Statutes § 46b-84 (b).
6. As to the real estate at 344 Valley Road, Greenwich, Connecticut, within thirty (30) days from the date hereof, George J. Rosza, as successor trustee of the Laszlo Kovacs Irrevocable Trust, shall reconvey all right, title, and interest therein to the husband by means of a CT Page 13047 fully-executed Quit Claim Deed along with completed Conveyance Tax Forms. Thereafter, the husband shall have sole title to his interest therein, free and clear of any claims by the wife, except as set forth hereinbelow, subject to the existing mortgage indebtedness, if any. Thereafter, the husband shall be responsible for the payment of all mortgages, liens, taxes, and insurance, and shall indemnify and hold the wife harmless from liability thereunder. The husband or his estate, as the case may be, shall pay to the wife the sum of ONE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($150,000.00) upon the sale or other transfer of title to the property (or any portion of it), a refinance of any existing mortgage or the obtaining of new or additional financing, the death of the husband, or three (3) years from the date of this Memorandum of Decision, whichever shall sooner occur. The husband shall execute a simple Promissory Note to the wife containing the usual language regarding the payment of reasonable attorneys fees and costs in the event of his default, and which will carry simple interest at the rate of eight (8%) percent per annum thereafter until paid in full. Both the mortgage deed and promissory note shall be executed simultaneously with the delivery of the Quit Claim Deed to the husband. Within thirty (30) days from the date hereof; the wife shall prepare and file, at her sole expense, a properly executed release of the Lis Pendens as on file in the land records of the Town of Greenwich, and shall at the same time provide counsel for the husband with satisfactory proof thereof. In addition thereto, the wife shall have exclusive possession of the larger portion of the premises rent free (She shall be responsible for utilities and minor repairs and replacements of $250.00 or less.), provided she occupy same with the children as her residence, at least until such time as the foregoing note is paid in full. The court hereby retains jurisdiction with regard to any issues which may arise therewith.
7. Personal property shall be divided as follows:
A. The children's furniture shall remain in the wife's residence.
B. The home furnishings (other than the children's furniture) shall be divided as nearly equally as possible. In the event that the parties are unable to agree upon a division, the issue is hereby referred to Family Relations for resolution and recommendation.
C. Each party shall be entitled to keep the automobile which they are currently driving (whether owned or leased) free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same. CT Page 13048
D. Except as otherwise set forth herein, each party shall be entitled to keep their respective savings, checking, and money market accounts free and clear of any claims by the other.
E. The existing individual retirement account balances shall be equalized as of October 1, 2002, and the husband shall, within thirty (30) days of this order, transfer from one or more of his accounts, tax-free, to an existing retirement accounts or accounts of the wife's choosing, a sum sufficient to do so. The court hereby retains jurisdiction with regard to any issues which may arise therewith.
F. Any insurance proceeds remaining in the possession of the successor trustee of the Laszlo Kovacs Irrevocable Inter Vivos Trust shall be first applied to any necessary repairs to the premises at 344 Valley Rd., and the balance paid to the parties in equal shares.
8. The husband shall maintain and pay for health insurance for each of the minor children so long as he shall be obligated to pay child support for that child. Unreimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor child, shall be divided by the parties, 45% by the husband and 55% by the wife. The provisions of General Statutes § 46b-84 (e) shall apply.
9. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon. The foregoing notwithstanding, each of the parties shall be responsible for the outstanding state and federal income tax liabilities for the years 2000 and 2001, together with any interest and penalties, in the following proportions: 60% by the husband and 40% by the wife. Each shall indemnify and hold the other harmless for any liability beyond their share, which indemnity shall include reasonable attorney's fees and cost incurred in defending said claim. In addition, each party shall be responsible for one-half of the outstanding balances of the dentist, orthodontist, and physical therapist for the minor children as of the date of this order.
10. Each party shall be responsible for their respective attorney's fees and costs incurred in connection with this action.
THE COURT
___________________ SHAY, J. CT Page 13049
 SCHEDULE "A"
D.N. FA00 0181999 S
ANNA KOVACS ) SUPERIOR COURT )) FOR THE JUDICIAL DISTRICT OF v. ) STAMFORD-NORWALK AT STAMFORD )
LASZLO KOVACS ) JUNE 26, 2002
 STIPULATION RE CUSTODY AND PARENTING PLAN
It is hereby stipulated and agreed by and between the parties and their respective counsel as follows:
1. The parties shall have joint legal custody of their minor children, whose principal residence shall be with the Mother. The Father shall have parenting time as follows:
(a) Every other weekend from Friday at 5:00 p.m. until Sunday at 8:00 p.m.
(b) Every Wednesday for dinner from 5:00 p.m. until 8:00 p.m.
2. Holidays: The parties shall alternate all major holidays, as follows:
(i) Alternating Martin Luther King Day from 9:00 a.m. until 8:00 p.m. The Mother shall have Martin Luther King Day in 2003 and in odd-numbered years thereafter. The Father shall have Martin Luther King Day in 2004 and in even-numbered years thereafter;
(ii) Alternating President's Day from 9:00 a.m. until 8:00 p.m. The Mother shall have President's Day in 2003 and in odd-numbered years thereafter. The Father shall have President's Day in 2004 and in even-numbered years thereafter;
(iii) Alternating Easter weekend, from 9:00 a.m. on Friday until 7:00 p.m. on Sunday. The Father shall have the children for Easter in 20Q3 and in odd-numbered years thereafter. The Mother shall have the children for Easter in 2004 and in even-numbered years thereafter;
(iv) Alternating Memorial Day from 9:00 a.m. until 8:00 p.m. The Mother shall have Memorial Day in 2003 and in odd-numbered years CT Page 13050 thereafter. The Father shall have Memorial Day in 2004 and in even-numbered years thereafter;
(v) Alternating Fourth of July. The Mother shall have Fourth of July in 2002 and in even-numbered years thereafter. The Father shall have Fourth of July in 2003 and in odd-numbered years thereafter;
(vi) Alternating Labor Day from 9:00 a.m. until 8:00 p.m. The Father shall have Labor Day in 2002 and in even-numbered years thereafter. The Mother shall have Labor Day in 2003 and in odd-numbered years thereafter;
(vii) Alternating Thanksgiving, from the end of the school day on Wednesday until 7:00 p.m. on Sunday. The Father shall have Thanksgiving in 2002 and in even-numbered years thereafter. The Mother shall have Thanksgiving in 2003 and in odd-numbered years thereafter.
(viii) Alternating Christmas Eve, from 9:00 a.m. until 8:00 p.m.. The Father shall have Christmas Eve in 2002 and in even-numbered years thereafter. The Mother shall have Christmas Eve in 2003 and in odd-numbered years thereafter;
(ix) Alternating Christmas Day from 9:00 a.m. until 8:00 p.m. The Mother shall have Christmas Day in 2002 and in even-numbered years thereafter. The Father shall have Christmas Day in 2003 and in odd-numbered years thereafter.
(x) Alternating New Year's Eve from 5:00 p.m. until 9:00 a.m. on New Year's Day. The Mother shall have New Year's Eve in 2002 and in even-numbered years thereafter. The Father shall have New Year's Eve in 2003 and in odd-numbered years thereafter.
(xi) Alternating New Year's Day from 9:00 a.m. until 8:00 p.m. The Father shall have New Year's Day in 2003 and in odd-numbered years thereafter. The Mother shall have New Year's Day in 2004 and in even numbered years thereafter.
(xii) The children shall be with the Father on the following days from 9:00 a.m. until 8:00 p.m.:
Father's Day;
The Father's birthday.
(xiii) The children shall be with the Mother on the following days CT Page 13051 from 9:00 a.m. until 8:00 p.m.:
Mother's Day;
The Mother's birthday.
(xiv) Both parties shall have the right to spend time with the children on their birthdays.
3. Vacations:
(a) The father shall have the children for four (4) weeks during the summer school vacation period.
(b) The parties shall alternate the children's Winter and Spring school vacation periods. The Mother shall have the Winter school vacation in 2003 and in odd numbered years thereafter, and shall have the Spring school vacation in 2004 and in even-numbered years thereafter. The Father shall have the children for the Winter school vacation period in 2004 and in even-numbered years thereafter, and shall have the Spring school vacation period in 2003 and in odd-numbered years thereafter.
4. Each of the parties agrees to keep the other informed at all times of the children's general whereabouts while with the Father or Mother, including the telephone number, and agrees that if either has knowledge of any illness or accident or other circumstances seriously affecting the health or welfare of the children, the Father or Mother, as the case may be, will promptly notify the other.
5. The parent with whom the children are residing shall be responsible for all day-to-day decisions pertaining to the children. The parties shall confer with each other on all important matters pertaining to the children's health, education, welfare and upbringing, with a view to arriving at a harmonious policy calculated to promote the best interests of the children.
6. Promptly upon receipt, each of the parties shall furnish the other copies of any reports from third persons or institutions concerning the health, education or welfare of the children.
7. The parties shall have reasonable access to the children while they are with the other party, including free access by mail and free access by telephone. Each party shall exercise parenting time with the children in the home of the other only with the prior express consent of that person. CT Page 13052
8. The Mother shall not relocate the children more than twenty (20) miles from Greenwich, Connecticut without a prior court order approving said relocation.
THE PLAINTIFF THE DEFENDANT
___________________ ___________________ ANNA KOVACS LASZLO KOVACS
THE PLAINTIFF THE DEFENDANT
By ___________________ By ___________________ Helen C. Bruno Cynthia C. George Her Attorney His Attorney